## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |  |
|---|---|---|
| **AGIS Software Development, LLC,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ZTE CORPORATION AND** | ) | Case No. 2:17-CV-00517-JRG |
| **ZTE (TX), INC.,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT ZTE (TX), INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
FOR FAILURE TO STATE A CLAIM AND IMPROPER VENUE OR IN THE
ALTERNATIVE TO TRANSFER**

## TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1) ........................................................................................... i

I.  INTRODUCTION: AGIS SOFTWARE HAS SUED THE INCORRECT DEFENDANT IN AN IMPROPER VENUE ..................................................... 1

II.  PROCEDURAL HISTORY: AGIS SOFTWARE CANNOT ESTABLISH VENUE ................................................................................................................ 2

III.  FACTUAL BACKGROUND: AGIS SUED THE WRONG DEFENDANT IN THE WRONG VENUE ........................................................................................ 3

  A.  Plaintiff AGIS Software ................................................................................. 3

  B.  Defendant ZTE (TX) Inc. .............................................................................. 3

IV.  STATEMENT OF LAW ............................................................................................ 5

  A.  The Complaint Must Plausibly Allege That The Defendant Can Infringe ............. 5

  B.  Venue In Patent Cases Can Only Exists If Each Defendant Resides Or Has A Regular And Established Place of Business In the Forum ................................. 6

    1.  Residency Of Defendants In Patent Cases Is Determined On A District-by-District Basis, Not A State-By-State Basis ............................. 7

    2.  Venue Over Non-Resident Defendants Requires A Regular And Established Place Of Business In The Forum ............................................ 9

V.  ARGUMENT: THE COMPLAINT SHOULD BE DISMISSED .................................. 10

  A.  The Complaint Should Be Dismissed For Failure To State A Claim .................. 11

    1.  AGIS Software Fails To Allege Or Plead Facts Sufficient To Prove Direct Infringement By ZTX ................................................................. 11

    2.  AGIS Software Fails To Allege Or Plead Facts Sufficient To Prove Indirect Infringement By ZTX ............................................................. 13

  B.  The Complaint Should Be Dismissed For Improper Venue ................................ 14

    1.  ZTX Does Not Reside In This District ..................................................... 15

    2.  ZTX Has Not Committed Acts Of Infringement In This District ............. 16

    3.  ZTX Does Not Maintain A Regular And Established Place Of Business In This District .......................................................................... 17

C.  Should The Court Not Dismiss This Case, It Should Be Transferred To The Western District of Texas or the Northern District of California .................. 19

1.  The Private Interest Factors Favor Transfer To The Northern District of California Or The Western District of Texas ......................... 21

a.  The Relative Ease of Access To Sources of Proof Strongly Favors Transfer ........................................................................... 21

b.  The Availability Of Compulsory Process Favors Transfer .......... 24

c.  The Cost of Attendance For Willing Witnesses Favors Transfer ................................................................................... 24

d.  The Remaining Private Interest Factor Is Neutral. ...................... 26

2.  The Public Interest Factors Favor Transfer To California ....................... 26

a.  The Northern District Of California Has A Substantial Connection To and Local Interest In Adjudicating This Case ........................................................................................ 26

b.  Administrative Difficulty From Court Congestion Is Neutral .................................................................................... 27

c.  The Remaining Public Interest Factors Are Neutral .................... 27

VI.  CONCLUSION: THIS CASE SHOULD BE DISMISSED OR TRANSFERRED ......... 28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*"A" Co. v. Consyne Corp.*,
    191 U.S.P.Q. (BNA) 126 (S.D.CA 1975) ...................................................................8

*Action Commun. Sys. v. Datapoint Corp.*,
    426 F.Supp. 973 (N.D. Tex. 1977) .................................................................8, 15, 16

*American GNC Corp. v. ZTE Corp.*,
    2:17-CV-00107 (E.D. Tex. Sep. 5, 2017) ..................................................................28

*In re Apple, Inc.*,
    456 Fed.Appx. 907, 2012 WL 112893 (Fed. Cir. 2012) .........................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................5, 6, 10, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................5, 6, 10, 12

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ..................................................................5, 12

*Blue Spike, LLC v. Caterpillar, Inc.*,
    6:16-CV-01361, 2017 WL 4129321 (E.D. Tex. Sep. 9, 2017) ...........................7, 14

*Bowlby v. City of Aberdeen*,
    681 F.3d 215 (5th Cir. 2012) ........................................................................6

*California Irrigation Services, Inc. v. Bartron Corp.*,
    654 F. Supp. 1, 227 U.S.P.Q. 414 (N.D. Cal. 1985) ................................................8

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010) ........................................................................5

*In re Cray*,
    __ F.3d __, No. 2017-129 (Fed. Cir. Sept. 21, 2017) ..................................... *passim*

*DSS Tech. Management, Inc. v. Apple, Inc.*,
    No. 13-cv-00919, 2014 WL 6847569 (E.D. Tex. Nov. 17, 2014) ...........................25

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) (*en banc*) ...........................................................13

*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007) ...................................................................................16

*Fourco Glass Co. v. Transmirra Products Corp.*,
353 U.S. 222 (1957)...........................................................................................8, 15

*Frederick v. Advanced Fin. Solutions, Inc.*,
558 F.Supp.2d 699 (E.D. Tex. 2007) ......................................................................19

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)......................................................................... *passim*

*Groupchatter, LLC v. Itron, Inc.*,
No. 15-900, 2016 WL 2758480 (E.D. Tex. May 12, 2016)..............................22, 24

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)...............................................................................26

*Imation Corp. v. Koninklijke Philips Elecs. N.V.*,
586 F.3d 980 (Fed. Cir. 2009)...................................................................................6

*Indus. Tech. Research Inst. v. LG Corp.*,
No. 6:10-cv-628 LED-JDL, 2011 WL 10622246 (E.D. Tex. Nov. 29, 2011)..................19, 27

*Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al.*,
No. 5:16-cv-11-CMC, 2016 WL 4424967  (E.D. Tex. July 21, 2016).......................22, 24, 27

*LBS Innovations, LLC v. Nokia USA, Inc. et al.*,
No. 2:15-cv-1972, 2016 WL 3407611 (E D. Tex. June 21, 2016) ...........................6

*M2M Solutions LLC v. Telit Communs. PLC*,
2015 U.S. Dist. LEXIS 102349 (D. Del. 2015) ......................................................11

*Macronix Int'l Co. v. Spansion Inc.*,
4 F.Supp.3d 797 (E.D. Va. 2014) ...........................................................................12

*Magnacoustics, Inc. v. Resonance Technology Co.*,
No. 97–1247, 1997 WL 592863 (Fed. Cir. Sept. 25, 1997).............................2, 6, 14

*McZeal v. Sprint Nextel Corp.*,
501 F.3d 1354 (Fed. Cir. 2007)................................................................................6

*Melvin Lloyd Co. v. Stonite Products Co.*,
119 F.2d 883 (3d Cir. 1941), *rev'd Stonite Products Co. v. Melvin Lloyd Co.*,
315 U.S. 561 (1942)..................................................................................................7

*In re Microsoft Corporation*,
630 F.3d 1361 (Fed. Cir. 2011)..................................................................20, 23, 26

iv

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994)..........................................................................16

*Network Protection Scis., LLC v. Juniper Networks, Inc.*,
   No. 10-cv-00224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .............................................20

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009)...........................................................................20, 24, 25

*RAH Color Techs. LLC v. Ricoh USA Inc.*,
   No. 2:15-CV-05203-JCJ, 2016 WL 3632720 (E.D. Pa. July 7, 2016) ....................................5

*Raindance Tech., Inc. v. 10X Genomics, Inc.*,
   No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016) ...................................5

*Ruby Sands LLC v. Am. Nat'l Bank of Texas, et al.*,
   No. 2:15-cv-1955, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ...........................5, 6, 12, 13

*Samsonite Corp. v. Tex. Imperial Am., Inc.*
   218 U.S.P.Q. (BNA) 325 (N.D. Tex. 1982)...........................................................9

*Shaw v. Quincy Mining Co.*,
   145 U.S. 444 (1892)..................................................................................7, 8, 16

*Software Rights Archive, LLC v. Google, Inc.*,
   No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2011) .........................26

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ...........................................................................16

*Sterling Drug Inc. v. Intermedics, Inc.*,
   1986 U.S. Dist LEXIS 31320 (W.D. Tex. 1986).....................................................9

*Stonite Products Co. v. Melvin Lloyd Co.*,
   315 U.S. 561 (1942)..................................................................................7, 8, 15

*TC Heartland LLC v. Kraft Food Brands Grp. LLC*,
   137 S.Ct 1514 (2017)......................................................................... *passim*

*In re Toa Techs., Inc.*,
   543 F.App'x 1006 (Fed. Cir. 2013) .....................................................................20

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014)..........................................................................20, 21

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)..........................................................................19, 24

*Van De Vliert v. Tam Int'l, Inc.*,
    No. 6:15-CV-135-JRG, 2015 WL 6745811 (E.D. Tex. Oct. 30, 2015)....................................6

*Vibber v. United States Rubber Co.*,
    255 F.Supp. 47, 150 U.S.P.Q. 30 (S.D.N.Y. 1966) ...................................................................8

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .............................................................................18, 19, 23, 24

*Windy City Innovations, LLC v. Microsoft Corp.*,
    No. 16-CV-01729-YGR, 2016 WL 3361858 (N.D. Cal. June 17, 2016) ...........................5, 23

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    No. 10-cv-00364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012)............................................21

*Wright Mfg., Inc. v. Toro Co.*,
    No. 11-1373, 2011 WL 6211172 (D. Md. Dec. 13, 2011)....................................................14

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010).....................................................................................20, 23

**Federal Statutes**

28 U.S.C. (1940 ed.) § 109 ...............................................................................................7, 8

28 U.S.C. § 1391(c) ...............................................................................................................8

28 U.S.C. § 1400(b) ..................................................................................................... *passim*

28 U.S.C. § 1404(a) ..............................................................................................18, 19, 24

28 U.S.C. § 1406(a) .............................................................................................................18

35 U.S.C. § 271(b) ...............................................................................................................12

**Rules**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................5

Fed. R. Civ. P. 12 ..................................................................................................................1

Fed. R. Civ. P. 12(b)(3)..........................................................................................................4

Fed. R. Civ. P. 12(b)(6)......................................................................................................4, 5

Fed. R. Civ. P. 45(c)(1)(A) ..................................................................................................23

Fed. R. Civ. P. 84 ..................................................................................................................5

**Other Authorities**

17 Moore's Fed. Practice 3d § 111.12[4][b] ................................................................2

8-21 Chisum on Patents, §21.02 ...............................................................................8

*Boost Mobile Corporate Office Headquarters HQ,*
    CorporateOfficeHeadquarters.com,
    http://www.corporateofficeheadquarters.com/2011/07/boost-mobile.html (last
    visited Sept. 26, 2017) ........................................................................................22

Google Careers, https://careers.google.com/locations/mountain-view/ (last visited
    Sept. 26, 2017) ....................................................................................................22

www.ztetx.com (last visited Sept. 26, 2017) ........................................................11, 12

www.agisinc.com/about/ (last visited Sept. 26, 2017)...............................................23

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)

1) Whether the Court should dismiss this patent case under 28 U.S.C. § 1406 for improper venue because the Defendant does not reside in this Judicial District, has not committed alleged acts of infringement in this District, and does not have a regular and established place of business here, as required to support venue under 28 U.S.C. § 1400.

2) Whether the Court should dismiss this patent case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because Plaintiff's Complaint fails to plead or allege facts sufficient to prove that Defendant, an entity providing research and development and technical marketing services for a single customer, performs any allegedly infringing activities.

3) Alternatively, whether the Court should transfer this case to the Western District of Texas or the Northern District of California under 28 U.S.C. § 1404, Districts where venue is proper and that are much more convenient for the parties and the witnesses.

I.      **INTRODUCTION: AGIS SOFTWARE HAS SUED THE INCORRECT DEFENDANT IN AN IMPROPER VENUE**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant ZTE (TX) Inc. ("ZTX")[1] moves to dismiss the Complaint of AGIS Software Development LLC ("AGIS Software") for failure to state a claim upon which relief may be granted and for improper venue.

To allege a claim for direct infringement, AGIS Software must recite facts sufficient to state a claim for relief that is plausible on its face. This includes facts plausibly establishing that the Defendant makes, uses, sells, or offers to sell accused products that meet each limitation of every asserted claim. AGIS Software's Complaint does not plausibly set forth a case that ZTX infringes any claim of the asserted patents[2] because it cannot.

ZTX conducts research and development activities and provides technical marketing support for ZTE Corporation. Shan Decl. ¶ 4. ZTX does not make, sell or offer to sell in the Eastern District of Texas ("EDTX") the allegedly infringing products identified by AGIS Software. *Id*. ¶ 8-10. ZTX does not import any products–including without limitation the allegedly infringing products–into the EDTX for third-party demonstrations, sales, offers for sale, qualification testing, or other commercial purposes. *Id*. ¶ 11. ZTX does not use any products – including without limitation the allegedly infringing products – in the EDTX, other than as an end-user of consumer wireless equipment similar to any other US consumer or company which conducts business by phone. *Id*. ¶ 12. As such, ZTX cannot be accused of infringing the Patents-in-Suit, and the case should be dismissed.

---

[1] Defendant ZTE Corporation has not yet been served with the Complaint in this case or appeared in this case, and thus this Motion is on behalf of ZTX only.

[2] U.S. Patent Nos. 8,213,970 (the "'970 patent"); 9,408,055 (the "'055 patent"); 9,445,251 (the "'251 patent"); and 9,467,838 (the "'838 patent") (collectively, the "Patents-in-Suit").

Moreover, ZTX does not reside in the EDTX, has not committed alleged acts of infringement in this District (or anywhere), and lacks a regular and established place of business in this District. As such, under the test for venue case in patent cases recently affirmed by the Supreme Court and clarified by the Federal Circuit, this District is not a proper forum for this case. The Complaint should be dismissed as to ZTX for this additional reason.

## II.    PROCEDURAL HISTORY: AGIS SOFTWARE CANNOT ESTABLISH VENUE

On June 21, 2017, AGIS Software filed a complaint against ZTX and ZTE Corporation alleging direct and indirect infringement of the Patents-in-Suit. Dkt. No. 1 at ¶¶ 19, 20, 28, 29, 41, 42, 54, 55. AGIS Software alleged that alleged certain electronic devices (in particular, Android-based smartphones and tablets including the Tempo, Axon 7, Axon 7 mini, Blade V8 Pro, ZMax Pro, and ZMax 2) (collectively, the "Accused Devices") infringe the Patents-in-Suit, because these electronic devices are allegedly pre-configured or adapted with certain mapping or GPS-related functionality. *Id.* at ¶¶ 16, 21, 22, 30-35, 43-48, 56-61.

Plaintiff alleges venue in the EDTX based on 28 U.S.C. § 1400(b) because "ZTE (TX) Inc. is incorporated in the State of Texas and, thus, resides in Texas" and furthermore "Defendants together have regular and established places of business in this judicial district, including in Plano, are deemed to reside in this judicial district, have committed acts of infringement in this judicial district, and/or have purposely transacted business involving the accused products in this judicial district." *Id.* at ¶ 6. But this is incorrect, because, as discussed in more detail below, ZTX is not a resident of the EDTX, has not committed acts of infringement in the EDTX, and lacks a regular and established place of business in the EDTX. *See TC Heartland LLC v. Kraft Food Brands Grp. LLC*, 137 S.Ct 1514 (2017); *In re Cray*, __ F.3d __, No. 2017-129 (Fed. Cir. Sept. 21, 2017).

Moreover, AGIS Software improperly treats ZTX and ZTE Corporation as a single entity for venue purposes. Venue, however, must be determined as to each defendant separately. *Magnacoustics, Inc. v. Resonance Technology Co.*, No. 97–1247, 1997 WL 592863, at \*1 (Fed. Cir. Sept. 25, 1997) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants venue and jurisdiction requirements must be met as to ***each defendant***.") (citing 17 Moore's Fed. Practice 3d § 111.12[4][b]) (emphasis added).

## III.   FACTUAL BACKGROUND: AGIS SUED THE WRONG DEFENDANT IN THE WRONG VENUE

### A.   Plaintiff AGIS Software

AGIS Software is allegedly organized under the laws of the State of Texas, with a principal place of business at 100 W. Houston Street, Marshall, Texas 75670. Dkt. 1 at ¶ 1. AGIS Software's mailing address, however, is in Austin, Texas, and AGIS Software formed on June 1, 2017, just weeks before filing five patent infringement suits in the EDTX. Ex. A.

### B.   Defendant ZTE (TX) Inc.

ZTX is a wholly owned subsidiary of ZTE Corporation, ZTE Hong Kong Ltd., which is in turn a wholly owned subsidiary of ZTE Corporation, an entity incorporated under the laws of the People's Republic of China. Shan Decl. ¶ 3. ZTX conducts research and development activities and provides technical marketing support for ZTE Corporation. *Id.* ¶ 4. ZTX's research and development activities include designing telecommunications devices and developing telecom technology standards, solutions, and applications for the next generation of telecommunications technology. *Id.* ZTX operates in the areas of wireline technology, wireless technology, microwave technology, and handset technology. *Id.* ZTE Corporation is the only customer of ZTX. *Id.* ¶ 5. ZTX does not provide any services to third parties other than ZTE Corporation. *Id.* ¶ 6.

With its focus on R&D, ZTX does not manufacture or make, use, offer to sell, or sell any products in the EDTX, including without limitation any "Accused Devices." *Id.* ¶¶ 8-10. ZTX does not import any products into the EDTX for third-party demonstrations, sales, offers for sale, qualification testing, or other commercial purposes. *Id.* ¶ 11. ZTX does not use any products in the EDTX, other than as an end-user of consumer wireless equipment similar to any other US consumer or company which conducts business by phone. *Id.* ¶ 12.

Though ZTX is a Texas company, *Id.* ¶ 14, its principal place of business is located in Milpitas, California. *Id.* ¶ 13. ZTX maintains a server for storing technical documents and agreements for ZTX in San Diego, California. *Id.* ¶ 16. ZTX stores documents relevant to the research agreements between ZTX and ZTE Corporation at ZTX's principal place of business in Milpitas, California. *Id.* ZTX also maintains offices in Durham, North Carolina; Morristown, New Jersey; San Diego, California, and Austin, Texas. *Id.* ¶ 13.

ZTX does not have, and does not advertise or represent that it has, a physical place of business in the EDTX. *Id.* ¶ 14. Indeed, ZTX does not have any offices, warehouses, stores, facilities, and bank accounts in the EDTX. *Id.* ZTX's registered agent, who filed ZTX's incorporation papers, is located at 2500 Dallas Parkway, Plano, Texas 75093, but the agent's office is not a ZTX place of business.

Though ZTX has no offices here, ZTX does have fourteen employees living in the EDTX who work remotely from home. *Id.* Eleven of those employees live in Plano, Texas, and three live in Allen, Texas. *Id.* These employees are free to live wherever they choose, as far as ZTX is concerned. *Id.* As such, ZTX has not conditioned the employment of any ZTX employee upon continued residence in the EDTX or upon carrying out business of ZTX in the EDTX. *Id.* ZTX employees in Texas are principally concerned with technical marketing support and research and

development activities relating to microelectronics. *Id.* ¶ 15. None of ZTX's employees in Texas are expected to have unique knowledge relevant to this case. *Id.*

## IV.     STATEMENT OF LAW

This case should be dismissed for failure to state a claim and for improper venue under Federal Rules of Civil Procedure 12(b)(6) and (3).

### A.     The Complaint Must Plausibly Allege That The Defendant Can Infringe

To state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Form 18 of Fed. R. Civ. P. 84 previously governed pleading requirements for allegations of direct infringement, this rule was abrogated on Dec. 1, 2015. *See Ruby Sands LLC v. Am. Nat'l Bank of Texas, et al.*, No. 2:15-cv-1955, 2016 WL 3542430, at *2-3 (E.D. Tex. June 28, 2016) (stating that "[f]orm 18 no longer provides a safe harbor for direct infringement claims."); *Raindance Tech., Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016). As a result, pleading requirements for direct infringement claims now must meet the same higher standard as those for indirect infringement. *Ruby Sands LLC*, 2016 WL 3542430, at *3; *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *Windy City Innovations, LLC v. Microsoft Corp.*, No. 16-CV-01729-YGR, 2016 WL 3361858, at *4 n.8 (N.D. Cal. June 17, 2016); *RAH Color Techs. LLC v. Ricoh USA Inc.*, No. 2:15-CV-05203-JCJ, 2016 WL 3632720, at *1 (E.D. Pa. July 7, 2016).

Although detailed factual allegations are not required, to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining the plausibility of a complaint is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although a court must assume that the facts presented by the plaintiff are true, this assumption excludes "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152-53 (5th Cir. 2010); *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). It is not enough for a complaint to "plead[] facts that are 'merely consistent' with a defendant's liability[.]" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). And a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Indeed, courts in the Fifth Circuit[3] routinely dismiss patent infringement complaints for failing to meet the pleading requirements of *Twombly* and *Iqbal*. *See, e.g., Ruby Sands LLC*, 2016 WL 3542430, at *4-5; *LBS Innovations, LLC v. Nokia USA, Inc. et al.*, No. 2:15-cv-1972, 2016 WL 3407611, at *2-3 (E.D. Tex. June 21, 2016); *Van De Vliert v. Tam Int'l, Inc.*, No. 6:15-CV-135-JRG, 2015 WL 6745811, at *1-2 (E.D. Tex. Oct. 30, 2015).

**B.      Venue In Patent Cases Can Only Exists If Each Defendant Resides Or Has A Regular And Established Place of Business In the Forum**

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland LLC,* 137 S. Ct. at 1516 (quoting 28 U.S.C. §

---

[3] A motion to dismiss a complaint for failure to state a claim upon which relief can be granted is a purely procedural question governed by the law of the regional circuit. *See Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 984 (Fed. Cir. 2009) (stating that "[t]he Federal Circuit defers to the law of the regional circuits on matters of procedural law that do not implicate issues of patent law.") (emphasis added); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007).

1400 (b)). In an action involving multiple defendants, venue and jurisdiction requirements must be met as to each defendant. *Magnacoustics, Inc.*, 1997 WL 592863, at *1. When formal separation of entities is preserved, activities of a parent corporation do not establish venue over a wholly-owned subsidiary of the parent corporation. *Blue Spike, LLC v. Caterpillar, Inc.*, 6:16-CV-01361, 2017 WL 4129321, *2-4 (E.D. TX Sep. 9, 2017).

      1.      **Residency Of Defendants In Patent Cases Is Determined On A District-by-District Basis, Not A State-By-State Basis**

By the plain terms of the statute, the first way to establish venue in patent infringement cases is to file suit "in *the judicial district* where the defendant resides." 28 U.S.C. §1400(b) (emphasis added). The plain language of the statute and Supreme Court precedent make clear that residence is established in *judicial districts*, not entire states:

> [I]n a State containing more than one district, actions not local should "be brought in the district in which the defendant resides…." The whole purport and effect of [the then-venue statute at issue]… was not to enlarge, but to restrict and distribute, jurisdiction. It applied only to a State containing two or more districts; and directed suits against citizens of such a State to be brought in that district thereof in which they… resided. It did not subject defendants to any new liability to be sued out of the State of which they were citizens, but simply prescribed in which district of that State they might be sued.

*Shaw v. Quincy Mining Co.,* 145 U.S. 444, 447-448 (1892). Thus, a corporation can "be sued *only in the State and district* in which it has been incorporated." *Id.* at 449 (emphasis added).

The Supreme Court has confirmed the principle announced in *Shaw*. For example, in *Stonite Products Co. v. Melvin Lloyd Co.,* 315 U.S. 561 (1942), the Court applied the principle in a patent case, interpreting 28 U.S.C. §1400(b)'s predecessor, 28 U.S.C. (1940 ed.) §109.

Defendant Stonite Products was a Pennsylvania corporation with its principal place of business in the Eastern District of Pennsylvania. *Melvin Lloyd Co. v. Stonite Products Co.*, 119 F.2d 883, 884, (3d Cir. 1941), *rev'd Stonite Products Co. v. Melvin Lloyd Co.,* 315 U.S. 561 (1942). But in *Stonite Products Co.*, the Court affirmed that venue over defendant Stonite Products was improper in Western District of Pennsylvania. *Id.* at 563. The Court found that Stonite Products was only "an inhabitant of the Eastern District of Pennsylvania," not of every district in the state. *Id.* at 562. Like 28 U.S.C. §1400(b) today, the similarly-worded predecessor statute restricted venue in a patent case to "the *district* of which the defendant is an inhabitant," *Id.* at Fn. 1 (emphasis added).

*Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957) supports the conclusion that the principle of *Shaw* and *Stonite* was not affected by the recodification of 28 U.S.C. (1940 ed.) §109 into 28 U.S.C. §1400(b). In *Fourco*, the defendant was sued outside its state of incorporation, and the Court relied on *Shaw* for the proposition that, in the context of venue in patent cases, "resides" means the "state of incorporation only," contrasting the restrictive patent venue statute with the permissive general venue statue,[4] which made corporation suable in judicial districts in which they were merely doing business. *Id.* at 226. In making this comparison, the Court did not *expand* the meaning of "resides" established in *Shaw*. *See id*. at 226-228. The Supreme Court reaffirmed *Fourco* in *TC Heartland LLC,* 137 S. Ct. at 1516, confirming that 28 U.S.C. § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and … is not to be supplemented by § 1391(c)." *Id.* at 1519.

Thus, for purposes of patent venue, a domestic corporation "resides" only in the judicial district in its state of incorporation that includes its principal place of business; not in districts in

---

[4] 28 U.S.C. § 1391(c).

other States, and not in other districts *within* its State of incorporation. *See* 8-21 Chisum on Patents, §21.02. ("The weight of authority indicates that a corporation is a resident only of the district in which it has its principal office." (citing *Vibber v. United States Rubber Co.,* 255 F. Supp. 47, 150 U.S.P.Q. 30 (S.D. N.Y. 1966) and *California Irrigation Services, Inc. v. Bartron Corp.*, 654 F. Supp. 1, 227 U.S.P.Q. 414, 415 (N.D. Calif. 1985) ("a defendant corporation resides in the district in its state of incorporation where its principal place of business is")). *Accord "A" Co. v. Consyne Corp.*, 191 U.S.P.Q. (BNA) 126 (S.D.CA 1975); *Action Commun. Sys. v. Datapoint Corp.,* 426 F.Supp. 973, 974-5 (N.D. Tex. 1977); *Samsonite Corp. v. Tex. Imperial Am., Inc.* 218 U.S.P.Q. (BNA) 325, 326 (N.D. Tex. 1982); *Sterling Drug Inc. v. Intermedics, Inc.*, 1986 U.S. Dist LEXIS 31320 (W.D. Tex. 1986))

> 2.    **Venue Over Non-Resident Defendants Requires A Regular And Established Place Of Business In The Forum**

The second way to establish venue in patent cases under § 1400(b) is to file suit "where the defendant has committed acts of infringement and has a regular and established place of business."

The Supreme Court's *TC Heartland* decision does not define "a regular and established place of business" pursuant to § 1400(b). However, the Federal Circuit recently defined that phrase, finding that § 1400(b) requires that: (1) "a defendant has" a (2) "place of business" that is (3) "regular" and "established." *In re Cray*, No. 2017-129 at *10. All three of these requirements must be present for proper venue to exist in a district. *Id*. at *10. Thus, the Federal Circuit instructed, there first must be a physical place of business in the district, not merely a virtual space or electronic communications between persons in the district. *Id*. at *11. Second, the place of business must be regular and established–sporadic activity or presence cannot create venue. *Id*. at *12. Third, the regular and established place of business must be a place *of the defendant*,

not solely a place of the defendant's employee or of an entity that is not the specific defendant. *Id*. at *13.

Considerations relevant to whether a place is attributable to the defendant include: (1) whether the defendant exercises possession or control over the place; (2) whether the defendant conditioned employment upon an employee's continued residence at the place or continued performance of business from the place; and (3) whether the defendant holds the place out as a place for its business. *Id*. at *13 Therefore, when an employer does not own, lease, or rent an employee's home, select the location of the employee's home, direct the employee to store inventory or conduct business at the employee's home, or condition employment or support upon the maintenance of the employee's home as a place of business of the employee, the employee's home is not attributable to the employer. *Id*. at *15-16. Moreover, an employee's home is not a place of business for the employer merely because the employer provides a salary, administrative support, or reimbursement of phone, internet, and business-related travel expenses. *Id*. at *15-16.

## V.      ARGUMENT: THE COMPLAINT SHOULD BE DISMISSED

AGIS Software's Complaint fails to state a claim upon which relief may be granted and venue is not proper in the EDTX.

Regarding failure to state a claim, the Complaint does not identify which defendant is responsible for which alleged acts of infringement, and cannot allege that ZTX is responsible for any allegedly infringing acts. Nor does the Complaint sufficiently allege that one defendant controls the other such that they could be treated together for purposes of infringement. Similarly, the Complaint fails to support allegations of indirect infringement with any factual statements establishing ZTX's knowledge or willful blindness.

Regarding venue, AGIS Software's assertion regarding ZTX's (alleged) residence in the EDTX is incorrect and must be disregarded. Even as a Texas Corporation, ZTX is only subject to venue in Western District of Texas ("WDTX"). Moreover, ZTX has not committed the (alleged) acts of infringement in the EDTX (or anywhere) and lacks a regular and established place of business in this District. *See* Shan Decl. at ¶ 14.

**A.      The Complaint Should Be Dismissed For Failure To State A Claim**

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663, 678 (quoting *Twombly*, 550 U.S. at 570. Furthermore, a complaint cannot lump defendants together in alleging infringement without justification, and must identify which particular defendant or defendants are responsible for which allegedly infringing products, processes or methods. *See M2M Solutions LLC v. Telit Communs. PLC,* 2015 U.S. Dist. LEXIS 102349 (D. Del. 2015) (finding that complaint pleading direct infringement failed to satisfy requirements of Form 18).

AGIS Software fails to distinguish between the actions of ZTX and ZTE Corporation, or to allege or plead facts sufficient to prove one defendant controls the other. AGIS Software also fails to allege or plead facts sufficient to prove the indirect infringement by ZTX. Accordingly, AGIS Software fails to state a claim.

**1.      AGIS Software Fails To Allege Or Plead Facts Sufficient To Prove Direct Infringement By ZTX**

AGIS Software's complaint fails because, after initially identifying ZTX and ZTE Corporation as defendants, AGIS Software subsequently treats ZTX and ZTE Corporation collectively. As in *M2M Solutions LLC*, AGIS Software's Complaint fails to identify whether ZTX or ZTE Corporation is responsible for the allegedly infringing products, processes, or

methods. This is fatal because ZTX does not perform any allegedly infringing acts. *See* Shan Decl. ¶¶ 8-12.

AGIS Software's Complaint fails to allege or plead facts sufficient to prove that ZTX made, used, sold, offered to sell, and/or imported the Accused Devices into the United States. Instead, AGIS Software's Complaint merely recites the elements of direct infringement, supported by conclusory statements. Dkt. No. 1 at ¶¶ 19, 28, 41, 54. And AGIS Software cannot plead such facts, as publically available information shows that ZTX's primary function is "to more effectively manage the R&D functions in the U.S." *See* Ztetx, www.ztetx.com (last visited Sept. 26, 2017). To this end ZTX "focuses on developing Telecom technology standards, solutions, and applications for the next generation of telecommunications technology," and "the R&D activities performed by the personnel of [ZTX] are mainly theoretical research on the next generation of telecommunications technology." *Id.*  Rather than make, use, offer to sell, or sell products (s*ee* Shan Decl. at ¶¶ 8-12), ZTX conducts research and development activities and provides technical marketing support for ZTE Corporation. Shan Decl. at ¶4. These research and development activities include designing telecommunications devices and developing telecom technology standards, solutions, and applications for the next generation of telecommunications technology. *Id*.

Accordingly, there are no factual allegations AGIS Software can make to establish that ZTX performs an allegedly infringing activity. As such, AGIS Software's Complaint fails to set forth sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Macronix Int'l Co. v. Spansion Inc*., 4 F.Supp.3d 797, 804 (E.D. Va. 2014). Thus, AGIS Software's direct infringement allegations against ZTX must be dismissed.

### 2.    AGIS Software Fails To Allege Or Plead Facts Sufficient To Prove Indirect Infringement By ZTX

AGIS Software's indirect infringement allegations also fail to satisfy the *Twombly/Iqbal* requirements. *See, e.g., In re Bill of Lading*, 681 F.3d at 1332, 1336-37, 1339; *Ruby Sands LLC*, 2016 WL 3542430, at *2-3. AGIS Software's Complaint merely parrots the elements of the induced infringement statute, and fails to allege or plead facts sufficient to prove that ZTX satisfied the knowledge and intent requirements of 35 U.S.C. § 271(b).[5] Accordingly, AGIS Software's induced infringement allegations must be dismissed.

When a single actor induces another to commit all the elements of infringement, the first actor is liable for induced infringement. *See* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). Induced infringement requires a showing "that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *Ruby Sands LLC*, 2016 WL 3542430, at *3; *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*) (stating "inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement").

AGIS Software's Complaint fails to allege or plead facts sufficient to show that ZTX specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement. For example, with respect to the '970 patent, AGIS Software alleges that the "Defendants" collectively and "intentionally instruct[] [their] customers to infringe through training videos, demonstrations, brochures, installations and/or user guides."

---

[5] AGIS Software's Complaint mentions contributory infringement only once, and does not include any allegations to support a contributory infringement claims.  *See* Dkt. No. 1 at ¶ 5. Thus, it is unclear whether AGIS Software intended to accuse ZTX of contributory infringement, but any such allegations are insufficient and should also be dismissed.

Dkt. No. 1 at ¶ 21. In support of this allegation, the Complaint cites websites of ZTE Corporation (www.ztedevice.com), ZTE USA (www.zteusa.com), and Boost Mobile. Dkt. No. 1 at ¶ 21. But AGIS Software fails to allege or plead facts sufficient to show that ZTX has provided such training videos, demonstrations, brochures, installations and/or user guides, or that actions taken by ZTE Corporation, ZTE USA, and/or Boost Mobile can be attributed to ZTX.

Similarly, AGIS Software alleges that the "Defendants" collectively and intentionally instruct "customers" to infringe through "ZTE agents and representatives located within this judicial district." Dkt. No. 1 at ¶ 21. AGIS Software's Complaint makes similarly insufficient allegations with respect to the '055 patent, the '251 patent, and the '838 patent. Dkt. No. 1 at ¶¶ 30, 43, 56. But the only customer of ZTX is ZTE Corporation, and ZTX does not provide any services to third parties other than ZTE Corporation. Shan Decl. at ¶¶ 5, 6. AGIS Software therefore fails to allege or plead facts sufficient to show that ZTX specifically intended a third party to directly infringe the Patents-in-Suit and knew that the third party's acts constituted infringement. *See Iqbal*, 556 U.S. at 678 (requiring sufficient factual matter in the complaint to provide a court with enough plausible evidence to "draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also, e.g., Wright Mfg., Inc. v. Toro Co.*, No. 11-1373, 2011 WL 6211172, at *3 (D. Md. Dec. 13, 2011) (dismissing "threadbare" and "inadequate" inducement allegations). As a result, AGIS Software's indirect infringement allegations must be dismissed.

### B.      The Complaint Should Be Dismissed For Improper Venue

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland,* 137 S. Ct. at 1516  (quoting 28 U.S.C. § 1400

(b)). The Federal Circuit recently held that a "regular and established place of business" must be a physical place of business and must be a place of the defendant, not solely a place of the defendant's employee. *In re Cray*, No. 2017-129 at *11, 13. Moreover, in an action involving multiple defendants, venue and jurisdiction requirements must be met as to each defendant. *Magnacoustics, Inc.*, 1997 WL 592863, at *1. When formal separation of entities is preserved, activities of a parent corporation do not establish venue over a wholly-owned subsidiary of the parent corporation. *Blue Spike, LLC.*, 6:16-CV-01361 at *2-4.

Following the Supreme Court's decision in *TC Heartland* and the Federal Circuit's decision in *Cray*, and in light of AGIS Software's failure to specifically accuse ZTX of any allegedly infringing acts (because ZTX does not perform any), this Court does not have venue over ZTX.

### 1.    ZTX Does Not Reside In This District

As discussed above, under 28 U.S.C. § 1400(b), venue is patent cases is only laid (1) in the district where the defendant resides, or (2) in any district in which the defendant committed acts of infringement and had a regular and established place of business. *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. at 562-67; *see* also *Fourco Glass Co.*, 353 U.S. at 227-228 (affirming that subsequent Congressional action did not affect *Stonite's* holding regarding the limits to venue in patent cases); *TC Heartland LLC*, 137 S.Ct. at 1520-21 (affirming that subsequent Congressional action did not affect *Fourco's* holding regarding the limits to venue in patent cases). Under the first prong of the venue statute (residence), a corporation may be sued only in the state of incorporation and, within that state, only in the judicial district where its principal place of business is located. *Action Commun Sys., Inc*, 426 F. Supp. at 974-975.

ZTX does not have a principle place of business in the EDTX. *See* Shan Decl. at ¶¶ 13, 14. The Complaint does not even allege as much. Instead, the Complaint incorrectly alleges that the ZTX's principal place of business is at 2500 Dallas Parkway, Plano, Texas 75093. Complaint, ¶3. That address is not a ZTX office at all. Instead, that address belongs to Ferguson, Braswell & Fraser, PC, the law firm that serves as ZTX's registered agent and that filed ZTX's incorporation papers. Shan Decl. ¶ 14. Venue for an entity does not lie based on the location of an entity's registered agent. *See* § 1400(b).

Contrary to AGIS Software's claims, ZTX's principal place of business is located in Milpitas, California. Shan Decl. ¶ 13. An office in Austin, Texas, is the only physical place of business maintained by ZTX in Texas. Shan Decl. ¶ 13. Therefore, venue cannot be supported by residency in the EDTX. *See* 28 U.S.C. § 1400 (b); *Fourco Glass,* 353 U.S. at 229; *Stonite Products Co. v. Melvin Lloyd Co.,* 315 U.S. at 562; *Shaw,* 145 U.S. at 447-448; *Action Commun Sys., Inc.,* 426 F. Supp. at 974-975.

2. **ZTX Has Not Committed Acts Of Infringement In This District**

The second part of § 1400(b) provides that venue in a patent infringement action may be in the judicial district "where the defendant has committed acts of infringement ***and*** has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). "[T]he situs of the infringement is wherever an offending act is committed." *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994).  AGIS Software's only allegations of venue are conclusory and deficient, at least as to ZTX. For example, AGIS Software references websites for ZTE Corporation and ZTE USA in the Complaint, Dkt. No. 1 at ¶¶ 22, 30, 43, 56, but fails to demonstrate that ZTX has performed any actionable conduct within the EDTX. Instead, AGIS Software makes various conclusory allegations concerning ZTX and ZTE Corporation collectively. But ZTX merely conducts research and development activities and provides

16

technical marketing support for ZTE Corporation. Shan Decl. ¶ 4. ZTE Corporation is the only customer of ZTX. *Id.* ¶ 5. And ZTX does not provide any services to third parties other than ZTE Corporation. *Id.* ¶ 6. Indeed, any relevant activity performed by ZTX with respect to alleged infringement occurred in a U.S. judicial district other than the EDTX, such as in the Western District of Texas ("WDTX") or the Northern District of California ("NDCA"). *See* Shan Decl ¶¶ 13, 14; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer.").

Even assuming arguendo that AGIS Software has sufficiently alleged facts to support any actionable conduct on the part of ZTX, which it has not, Plaintiff's unsupported, conclusory allegations are inadequate to properly establish venue in this District. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) ("We construe the plaintiffs' complaints in the light most favorable to them, accepting all well-pleaded facts as true, but we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

3.    **ZTX Does Not Maintain A Regular And Established Place Of Business In This District**

As discussed above, AGIS Software has not pled with specificity any facts establishing that ZTX has committed acts of infringement in this District. Even had AGIS Software done so, ZTX does not maintain a "regular place of business" in the EDTX, especially when applying the test set forth by the Federal Circuit in *In re Cray. See In re Cray*, Slip Op. at *10-16.

The petitioner in *In re Cray* did not have a physical place of business to support venue in the EDTX. *Id*. at *2. Instead, the petitioner paid a salary to an employee in the EDTX, and provided this employee administrative support and reimbursement for phone, internet, and business-related travel expenses. *Id*. at *14-15. But the Federal Circuit held that the employee's home was not a regular and established place of business of the petitioner. *Id*. at *15. The petitioner did not own, lease, or rent any portion of the employee's home; select the location of the employee's home; store inventory or conduct demonstrations at the employee's home; or condition the employee's employment or support on the maintenance of an EDTX location. *Id*. at *16. Accordingly, the employee's home was not a "regular and established place of business" of the petitioner, which supports venue, but rather "a physical location where an employee of the [petitioner] carries on certain work for his employer," which does not. *Id*. at *19.

Similarly, ZTX does not have any physical place of business in the EDTX. Shan Decl. ¶ 14. Consistently, ZTX does not advertise or represent that it has a place of business in the EDTX. *Id*. Accordingly, ZTX lacks a place of business that is "regular" and "established" in this District. While ZTX has fourteen employees working remotely from home here, ZTX does not own, lease, or otherwise exercise possession or control over the homes of these employees. *Id*. These employees are free to live wherever they choose. *Id*. Further, ZTX has not conditioned the employment of any employee upon continued residence in the EDTX or upon continued performance of ZTX business from his or her home in the EDTX. *Id*. ZTX's registered agent, who filed ZTX's incorporation papers, is in Plano, Texas, but the agent's office is not a ZTX place of business. *Id*.

Thus, like the petitioner in *In re Cray*, ZTX lacks a regular and established place of business within the EDTX, which is required for venue. Accordingly, venue is not proper in this District and the case should be dismissed. *See* 28 U.S.C. § 1400 (b); *Id*. at *10-14.

### C.    Should The Court Not Dismiss This Case, It Should Be Transferred To The Western District of Texas or the Northern District of California

This case should be dismissed for failure to state a claim, and for improper venue. Alternatively, if the Court declines to dismiss the Complaint, ZTX respectfully requests transfer of this case to the WDTX or the NDCA, both proper and much more convenient venues.

A district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of the parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406(a). To determine whether a case should be transferred, the court pursues a two-pronged inquiry. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (directing the EDTX to transfer).

First, the court determines whether the case originally could have been brought in the proposed transferee district. *Id.* As discussed above, a patent infringement action may be brought "where the defendant resides, or where the defendant has [allegedly] committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). If the threshold inquiry is met, the court then weighs the relative convenience of the transferee district and the transferor district, based on a number of private and public interest factors. *See, e.g.*, *Indus. Tech. Research Inst. v. LG Corp.*, No. 6:10-cv-628 LED-JDL, 2011 WL 10622246, at *2 (E.D. Tex. Nov. 29, 2011) (granting motion to transfer to District of New Jersey). The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and

inexpensive." *Volkswagen of Am., Inc.*, 545 F.3d at 315. The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law." *Id.*

"Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer." *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F.Supp.2d 699, 704 (E.D. Tex. 2007). The plaintiff's choice of forum, however, is entitled to no weight in determining whether to transfer venue. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."). This is particularly true where a plaintiff's recent and ephemeral contacts with a forum "are nothing more than a construct for litigation." *See, e.g.*, *Network Protection Scis., LLC v. Juniper Networks, Inc.*, No. 10-cv-00224, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) (citing *In re Microsoft Corporation*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)).

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). Thus, even though "[t]he analysis may not show that the transferee forum is far more convenient[,] that is not what is required. With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'" *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

This case could have been brought in the WDTX or the NDCA, and the convenience factors weigh in favor of transfer, with no factor weighing against it. Defendants therefore request that the Court transfer this case to the WDTX or the NDCA.

       1.     **The Private Interest Factors Favor Transfer To The Northern District of California Or The Western District of Texas**

          a.     **The Relative Ease of Access To Sources of Proof Strongly Favors Transfer**

Accessibility to sources of proof is an important private interest factor that weighs heavily in favor of transfer. *Id.* "The critical inquiry 'is relative ease of access, not absolute ease of access.'" *In re Toa Techs., Inc.*, 543 F.App'x 1006, 1009 (Fed. Cir. 2013) (citations omitted). Here, the sources of evidence in this case are far more accessible in the NDCA, where ZTX has its principal place of business, than in Texas. In patent cases, "the bulk of relevant evidence usually comes from the accused infringer." *Genentech, Inc.*, 566 F.3d at 1345.

Most, if not all, of Defendant's witnesses and physical evidence relating to the relationship between ZTX and ZTE Corporation are located at ZTX's principal place of business in Milpitas, California, in the NDCA, making the NDCA clearly the most convenient venue for the present case. For example, ZTX stores documents relevant to the research agreements between ZTX and ZTE Corporation at ZTX's principal place of business in Milpitas, California. Shan Decl. ¶ 16. And the ZTX office responsible for handsets and the server for ZTX's storing technical documents and agreements is located at ZTX's San Diego, California office.[6] *Id.* Thus, the NDCA is much more convenient for ZTX's California-based employees.

---

[6] That some of ZTX's relevant personnel and documentation may be located outside the Northern District of California does not alter the balance against transfer. *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 10-cv-00364, 2012 WL 506669, at *4 (E.D. Tex. Feb. 15, 2012) ("That there may be some relevant sources of proof spread outside of the

Furthermore, it would be much more convenient for the expected witnesses from ZTX's principal office in Milpitas, California to attend trial for these matters in the WDTX, where ZTX has an office, than it would be for them to travel to Marshall, Texas. *Id.* ¶ 17. Convenient, non-stop air service exists between San Jose, California, near ZTX's headquarters in Milpitas, California, and Austin, Texas. *Id.*

Expected third-party witnesses and evidence are also located in California, tipping the transfer analysis further in favor of the NDCA. In fact, AGIS Software's Complaint implicates several California-based third-parties who allegedly provide aspects of the technology incorporated in the Accused Products. For instance, the Complaint states that "non-party Google, Inc. ('Google') licenses the Android operating system to third parties, including Defendants, who design their own products that utilize the Android operating system." Dkt. No. 1 at ¶ 15.  The Complaint also implicates several Google smartphone applications in its allegations, including "Google Maps, Android Device Manager, Find My Device, Google Messages, Android Messenger, Google Hangouts, Google Plus, and Google Latitude."  *Id.* at ¶ 16, *see also, id.*, ¶¶ 21, 30, 43, 56. Google's headquarters are in Mountain View, California, in the NDCA. *See Mountain View (Global HQ),* Google Careers, https://careers.google.com/locations/mountain-view/ (last visited Sept. 26, 2017).

AGIS Software also alleges that ZTX indirectly infringes through Boost Mobile's website. *See* Dkt. No. 1 at ¶ 21. Boost Mobile's headquarters are in Irvine, California. *See  Boost Mobile   Corporate   Office   Headquarters   HQ,*   CorporateOfficeHeadquarters.com,

---

Northern District of California does not rebut the Defendants' showing that the Northern District of California is a clearly more convenient forum."); *Toyota Motor Corp*., 747 F.3d at 1340 ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.")

http://www.corporateofficeheadquarters.com/2011/07/boost-mobile.html (last visited Sept. 26, 2017). It would be much easier to access sources of proof from these two third parties from the NDCA than this District.

On the other hand, if AGIS Software has evidence or witnesses relevant to the issues in dispute in the present cases is located in the EDTX, it is likely minimal—favoring transfer. *Groupchatter, LLC v. Itron, Inc*., No. 15-900, 2016 WL 2758480, at *3 (E.D. Tex. May 12, 2016) (granting motion to transfer due to the lack of relevant evidence in the EDTX); *Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al*., No. 5:16-cv-11-CMC, 2016 WL 4424967 (E.D. Tex. July 21, 2016) (same). AGIS Software appears to have been formed on June 1, 2017, just weeks before filing five patent infringement suits in the EDTX. Ex. A. AGIS, Inc. the licensor of the Patents-in-Suit, is located in Jupiter, Florida. *See* About – AGIS, Inc., www.agisinc.com/about/ (last visited Sept. 26, 2017). Presumably, AGIS Software's relevant sources of proof are located there as well, outside the EDTX.

Thus, this indicates a "classic case where the plaintiff is attempting to game the system" in anticipation of litigation, with its weak connection to this District. *Zimmer Holdings, Inc*., 609 F.3d at 1381-82 (directing the EDTX to transfer). "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *Microsoft Corp.*, 630 F.3d at 1364 (ordering transfer where plaintiff incorporated under Texas laws and opened an office in Tyler shortly before filing suit). The Federal Circuit has also made clear that a Plaintiff cannot manufacture ties to Texas for venue. *See In re Apple, Inc.*, 456 Fed.Appx. 907, 908–09, 2012 WL 112893, at *1 (Fed. Cir. 2012) ("courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely

purpose of making that forum appear convenient.'") (citing *Microsoft Corp.*, 630 F.3d at 1364). Accordingly, the first private interest factor strongly favors transfer.

**b.      The Availability Of Compulsory Process Favors Transfer**

Availability of compulsory process to secure the attendance of non-party witnesses weighs in favor or transfer. *See Volkswagen of Am., Inc.*, 545 F.3d at 316. A transferee "venue with usable subpoena power [] weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. As mentioned, Google's headquarters are in Mountain View, California, in the NDCA. Thus, compulsory process would be available in the NDCA to ensure the attendance at trial of non-party Google witnesses. *See* Fed. R. Civ. P. 45(c)(1)(A). Because the Complaint implicates Google's Android operating system and several Google smartphone applications, the testimony of these witnesses may prove crucial. ZTX should be afforded the benefits of having such witness provide live testimony at trial. Accordingly, the second private interest factor favors transfer.

**c.      The Cost of Attendance For Willing Witnesses Favors Transfer**

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343; *see also Nintendo*, 589 F.3d at 1198-99 (weighing the travel burden and disruption to work and family for trial witnesses). As noted by the Fifth Circuit, "it is an obvious conclusion that it is more convenient for witnesses to testify at home and that additional distance means additional travel time" and additional monetary burden. *See Volkswagen of Am., Inc.*, 545 F.3d at 317. (citation, quotation marks, and brackets omitted). "Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *See id.* Additionally, "[b]ecause it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the

24

distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *Intelligent Automation Design*, No. 5:16-cv-CMC, at 9; *Groupchatter*, 2016 WL 2758480, at *4 (quoting *TS Tech USA Corp.*, 551 F.3d at 1320 (citations omitted)).

In this case, to the extent ZTX employees have knowledge regarding the issues relevant to AGIS Software's allegations, such as the relationship between ZTX and ZTE Corporation, most of these employees work or reside in the vicinity of Milpitas, California,  Shan Decl. ¶ 16, approximately 1,800 miles from this District. Ex. B. ZTX's operations in Texas principally concern technical marketing support and research and development activities related to microelectronics. Shan Decl. ¶ 15. None of ZTX's employees in Texas are expected to have unique knowledge relevant to this case. *Id.* Third parties, who are expected to have relevant information based on AGIS Software's own Complaint, are also located in California. Thus, the NDCA would be far less costly and much more convenient for witnesses from ZTX's principal place of business in Milpitas, California, as well as for witnesses from Google or Boost Mobile, located in the NDCA and Irvine, California, respectively.[7]

Though more costly and less convenient than the NDCA, the WDTX would also be more convenient than the EDTX. For instance, travel time from San Jose, California to Marshall, Texas is nearly twice the travel time as compared to travel time from San Jose, California to Austin, Texas. Shan Decl. ¶ 17.

---

[7] Both the NDCA and Irvine, California are approximately 1,800 miles closer to the NDCA than this one. Ex. B.

Here, where "most witnesses and evidence [are] closer to the transferee venue" and "few or no convenience factors [favor] the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198 (overturning denial of motion to transfer). Therefore, the third private factor weighs strongly in favor of transfer to the NDCA, and also in favor of transfer to the WDTX.

> ### d.    The Remaining Private Interest Factor Is Neutral.

The remaining private interest consideration concerns practical problems related to the ease, expense, and expediency of trial. These practical problems include those "rationally based on judicial economy." *DSS Tech. Management, Inc. v. Apple, Inc.*, No. 13-cv-00919, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 17, 2014).  Given the early stage of this proceeding, this private interest factor is neutral.

> ### 2.    The Public Interest Factors Favor Transfer To California

> ### a.    The Northern District Of California Has A Substantial Connection To and Local Interest In Adjudicating This Case

The NDCA has a significant interest in this dispute because (1) ZTX has its principal place of business in that District; (2) AGIS Software implicates at least one third party located in the NDCA; and (3) AGIS Software's allegations call into question the work and reputation of ZTX's and Google's employees residing or conducting business in the NDCA. *See, e.g.*, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferee district's local interest is strong because case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").

In contrast, the EDTX has no meaningful connection to this dispute. AGIS Software's litigation-manufactured and barely-detectable presence here does not outweigh the NDCA's manifest local interest in adjudicating this case. *See Microsoft*, 630 F.3d at 1364 (rejecting that

the court must honor "connections to a preferred forum made in anticipation of litigation and for

the likely purpose of making that forum appear convenient"); *see also Software Rights Archive,*

*LLC v. Google, Inc.*, No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22,

2011) ("Establishing a principal place of business in this district shortly before filing suit does

not create a local interest."). Thus, this factor favors transfer to the NDCA, as is neutral with

respect to transfer to the WDTX.

### b.      Administrative Difficulty From Court Congestion Is Neutral

Certain court congestion statistics favor transfer to the NDCA or the WDTX, while others

place the Districts very close together. For example, the EDTX has an extraordinary number of

patent cases pending on its docket. In since 2016, nearly 2,400 patent cases were filed in the

EDTX. Ex. C at 1.  In contrast, only around 330 patent cases were filed in the NDCA and only

84 patent cases were filed in the WDTX. Ex. C at 2, 3. Additionally, since 2000, the average

time to bench trial in patent cases in the NDCA (29 months) is only three months longer, and the

average time in the WDTX (30 months) is only four months longer, than in the EDTX (26

months). Ex. C at 4-6. However, "this factor is the most speculative and cannot alone outweigh

other factors." *Intelligent Automation Design*, No. 5:16-cv-11-CMC, at 11 (*citing Genentech*,

566 F.3d at 1347); *see also Indus. Tech. Research Inst..*, 2011 WL 10622246, at *8 (granting

motion to transfer to the District of New Jersey despite evidence of slightly faster time to trial in

the EDTX). Thus, this public interest factor is neutral.

### c.      The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral because federal patent law will apply to

this case and the EDTX, WDTX, and NDCA are all capable of adjudicating patent claims.

## VI.  CONCLUSION: THIS CASE SHOULD BE DISMISSED OR TRANSFERRED

Based on the forgoing, ZTX respectfully request that the Court dismiss AGIS Software's Complaint against them for failure to state a claim and improper venue or, alternatively, transfer this case to the WDTX or the NDCA.[8]

Respectfully submitted,

Dated: September 26, 2017

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANT ZTE (TX), INC.

---

[8] Alternatively, should the Court find that venue is proper in this District on the basis of ZTX's remote employee's homes here, and that other judicial districts are not clearly more convenient, ZTX respectfully requests transfer to the Sherman Division of this Court, which would be more convenient for ZTX's employees in Plano and Allen, Texas. *See American GNC Corp. v. ZTE Corp.*, 2:17-CV-00107, *1-2 (E. D. TX Sep. 5, 2017).

## <u>CERTIFICATE OF CONFERENCE</u>

The parties complied with Local Rule CV-7(h). On September 22, 2017, Defendants' counsel conferred with Plaintiff's counsel via telephone, and Plaintiff's counsel confirmed that Plaintiff opposes the transfer relief sought in this motion.

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") all counsel of record who have appeared in this case.  I also caused the documents above to be sent to all counsel of record via electronic mail.


*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANT ZTE TX, INC.