**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| **AGIS Software Development, LLC,** | ) | |
| | ) | |
| | ) | Case No. 2:17-CV-00517-JRG |
| ***Plaintiff,*** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ZTE CORPORATION,** | ) | |
| **ZTE (USA) INC.,** | ) | |
| **ZTE (TX), INC.** | ) | |
| | ) | |
| ***Defendants.*** | ) | |

**DEFENDANTS ZTE (TX) INC.'S AND ZTE (USA) INC.'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT FOR IMPROPER VENUE OR IN THE**
**ALTERNATIVE TO TRANSFER**

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)......................................................................................... i

I.    INTRODUCTION: AGIS SOFTWARE HAS FILED SUIT IN AN IMPROPER VENUE ............................................................................................................. 1

II.   PROCEDURAL HISTORY: AGIS CANNOT ESTABLISH VENUE ............................ 1

III.  FACTUAL BACKGROUND: AGIS FILED SUIT IN AN IMPROPER VENUE........... 3

       A.    Plaintiff AGIS ................................................................................................. 3

       B.    Defendant ZTE (TX) Inc. ................................................................................ 3

       C.    Defendant ZTE (USA) Inc................................................................................ 4

IV.   STATEMENT OF LAW........................................................................................... 7

       A.    Venue In Patent Cases Can Only Exists If Each Defendant Resides Or Has A Regular And Established Place of Business In the Forum................................. 7

              1.    Residency Of Defendants In Patent Cases Is Determined On A District-by-District Basis, Not A State-By-State Basis .............................. 8

              2.    Venue Over Non-Resident Defendants Requires A Regular And Established Place Of Business In The Forum........................................... 11

V.    ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED ............... 12

       A.    The Amended Complaint Should Be Dismissed For Improper Venue................. 13

              1.    Venue is Improper Under the First Prong of 28 U.S.C. § 1400(b).......... 14

                     a.    ZTA Does Not Reside In This District. ....................................... 14

                     b.    ZTX Does Not Reside In This District. ....................................... 14

              2.    Venue is Improper for the Defendants under the Second Prong of 28 U.S.C. § 1400(b) ................................................................................ 15

                     a.    ZTX has not Committed Acts of Infringement in the District and Does not Maintain A Regular And Established Place Of Business In This District ................................................ 15

                     b.    ZTA Does not Maintain A Regular And Established Place Of Business In This District.......................................................... 17

B.    Should The Court Not Dismiss This Case, It Should Be Transferred To The Northern District of California ...................................................................... 20

    1.    The Private Interest Factors Favor Transfer To The Northern District of California Or The Western District of Texas .......................... 22

        a.    The Relative Ease of Access To Sources of Proof Strongly Favors Transfer ........................................................................... 22

        b.    The Availability Of Compulsory Process Favors Transfer........... 25

        c.    The Cost of Attendance For Willing Witnesses Favors Transfer ....................................................................................... 26

        d.    The Remaining Private Interest Factor Is Neutral. ...................... 28

    2.    The Public Interest Factors Favor Transfer To California........................ 28

        a.    The Northern District Of California Has A Substantial Connection To and Local Interest In Adjudicating This Case............................................................................................. 28

        b.    Administrative Difficulty From Court Congestion Is Neutral.......................................................................................... 29

        c.    The Remaining Public Interest Factors Are Neutral.................... 30

VI.    CONCLUSION: THIS CASE SHOULD BE DISMISSED OR TRANSFERRED ......... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Accord "A" Co. v. Consyne Corp.*,
    191 U.S.P.Q. (BNA) 126 (S.D.CA 1975) .................................................................9

*Action Commun. Sys. v. Datapoint Corp.*,
    426 F.Supp. 973 (N.D.TX. 1977) .............................................................10, 14, 15

*In re Apple, Inc.*,
    456 Fed. Appx. 907, 2012 WL 112893 (Fed. Cir. 2012) .......................................25

*Blue Spike, LLC v. Caterpillar, Inc.*,
    6:16-CV-01361, 2017 WL 4129321 (E.D. TX Sep. 9, 2017) ......................8, 10, 13

*Blue Spike, LLC v. Nook Digital, LLC*, No. 6:16-CV-1361-RWS-JDL, 2017 WL
    3263871 (E.D. Tex. July 28, 2017), report and recommendation adopted sub
    nom. *Blue Spike, LLC v. Caterpillar, Inc.*, No. 6:16-CV-01361-RWS, 2017
    WL 4129321 (E.D. Tex. Sept. 19, 2017) ...............................................................10

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) ...........................................................................................10

*California Irrigation Services, Inc. v. Bartron Corp.*,
    654 F. Supp. 1, 227 USPQ 414 (N.D. Calif. 1985) .................................................9

*In re Cray*,
    871 F.3d 1355, No. 2017-129 (Fed. Cir. Sept. 21, 2017) ............................. *passim*

*Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen*,
    387 U.S. 556 (1967) ...............................................................................................10

*Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-00186-JRG, 2017 WL 3187473,
    (E.D. Tex. July 26, 2017) .......................................................................................10

*DSS Tech. Management, Inc. v. Apple, Inc.*,
    No. 13-cv-00919, 2014 WL 6847569 (E.D. Tex. Nov. 17, 2014) ..........................28

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
    No. 2:15-CV-37-RWS-RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017),
    report and recommendation adopted, No. 2:15-CV-00037-RWS, 2017 WL
    4693971 (E.D. Tex. July 31, 2017) ........................................................................10

*Fourco Glass Co. v. Transmirra Products Corp.*,
353 U.S. 222 (1957).................................................................................................9, 14, 15

*Frederick v. Advanced Fin. Solutions, Inc.*,
558 F. Supp. 2d 699 (E.D. Tex. 2007) ...................................................................................21

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)......................................................................16, 22, 26, 29

*Groupchatter, LLC v. Itron, Inc.*,
No. 15-900, 2016 WL 2758480 (E.D. Tex. May 12, 2016)..............................................25, 27

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)..............................................................................................28

*Indus. Tech. Research Inst. v. LG Corp.*,
No. 6:10-cv-628 LED-JDL, 2011 WL 10622246 (E.D. Tex. Nov. 29, 2011)...................21, 29

*Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al.*,
No. 5:16-cv-11-CMC (E.D. Tex. July 21, 2016) .........................................................25, 27, 29

*Magnacoustics, Inc. v. Resonance Technology Co.*,
No. 97–1247, 1997 WL 592863 (Fed. Cir. Sept. 25, 1997)......................................2, 7, 13, 20

*Melvin Lloyd Co. v. Stonite Products Co.*,
119 F.2d 883 (3d Cir. 1941), *rev'd Stonite Products Co. v. Melvin Lloyd Co.*,
315 U.S. 561 (1942)...................................................................................................................8

*In re Microsoft Corporation*,
630 F.3d 1361 (Fed. Cir. 2011)..................................................................................21, 25, 29

*Network Protection Scis., LLC v. Juniper Networks, Inc.*,
No. 10-cv-00224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .............................................21

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009)...............................................................................22, 26, 28

*Portsmouth Baseball Corp v. Frick*,
132 F. Supp. 922 (S.D.N.Y. 1955)..........................................................................................10

*Samsonite Corp. v. Tex. Imperial Am., Inc.*
218 U.S.P.Q. (BNA) 325 (N.D.TX. 1982) ..............................................................................10

*Shaw v. Quincy Mining Co.*,
145 U.S. 444 (1892)........................................................................................................8, 9, 15

*Software Rights Archive, LLC v. Google, Inc.*,
No. 07-cv-00511, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2011) .........................29

*Sperry Prod. v. Ass'n of Am. Railroads,*
    132 F.2d 408 (2d Cir. 1942) ...........................................................................10

*Sterling Drug Inc. v. Intermedics, Inc.,*
    1986 U.S. Dist LEXIS 31320 (W.D.TX. 1986)................................................10

*Stonite Products Co. v. Melvin Lloyd Co.,*
    315 U.S. 561 (1942)......................................................................................8, 15

*TC Heartland LLC v. Kraft Food Brands Grp. LLC,*
    137 S.Ct 1514 (2017).................................................................................. *passim*

*Touchscreen Gestures, LLC v. HTC Corp.*, 2013 WL 12204558 (E.D. Tex. Mar.
    27, 2013) .......................................................................................................26

*In re Toa Techs., Inc.,*
    543 F. App'x 1006 (Fed. Cir. 2013) ..............................................................22

*In re Toyota Motor Corp.,*
    747 F.3d 1338 (Fed. Cir. 2014).................................................................22, 23

*In re TS Tech USA Corp.,*
    551 F.3d 1315 (Fed. Cir. 2008).................................................................21, 27

*Vibber v. United States Rubber Co.,*
    255 F. Supp. 47, 150 USPQ 30 (S.D. N.Y. 1966) .................................................9

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) .........................................20, 21, 22, 25, 27

*In re Zimmer Holdings, Inc.,*
    609 F.3d 1378 (Fed. Cir. 2010).................................................................21, 25

**Federal Statutes**

28 U.S.C. (1940 ed.) § 109 ........................................................................8, 9

28 U.S.C. § 1391(c) ........................................................................................9

28 U.S.C. § 1400(b) .................................................................................. *passim*

28 U.S.C. § 1404(a) .................................................................20, 21, 27

28 U.S.C. § 1406(a) ......................................................................................20

**Rules**

Fed. R. Civ. P. 12..........................................................................................1

Fed. R. Civ. P. 12(b)(3)..............................................................................................7

Fed. R. Civ. P. 12(b)(6)..............................................................................................7

Fed. R. Civ. P. 45(c)(1)(A) .......................................................................................26

**Other Authorities**

17 Moore's Fed. Practice 3d § 111.12[4][b] ...............................................................3

8-21 Chisum on Patents, §21.02 .................................................................................9

*Boost Mobile Corporate Office Headquarters HQ*,
    CorporateOfficeHeadquarters.com,
    http://www.corporateofficeheadquarters.com/2011/07/boost-mobile.html (last
    visited Nov. 19, 2017)...........................................................................................23

*Google Careers*, https://careers.google.com/locations/mountain-view/ (last visited
    Nov. 19, 2017) ......................................................................................................24

www.agisinc.com/about/ (last visited Nov. 19, 2017)................................................25

**STATEMENT OF ISSUES TO BE DECIDED BY THE COURT PURSUANT TO LOCAL RULE 7(a)(1)**

1) Whether the Court should dismiss this patent case under 28 U.S.C. § 1406 for improper venue because the Defendants do not reside in this Judicial District, have not committed alleged acts of infringement in this District, and do not have a regular and established place of business here, as required to support venue under 28 U.S.C. § 1400.

2) Alternatively, whether the Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404, a District where venue is proper and that is much more convenient for the parties and the witnesses.

## I.      INTRODUCTION: AGIS SOFTWARE HAS FILED SUIT IN AN IMPROPER VENUE

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendants ZTE (TX) Inc. and ZTE (USA) Inc. ("ZTX" and "ZTA," respectively)[1] move to dismiss the Complaint of AGIS Software Development LLC ("AGIS") for improper venue.

AGIS's Amended Complaint alleges patent infringement against three separate entities: ZTX, ZTA, and ZTE Corporation ("ZTC"). But for venue to be proper in this District for this case, AGIS must establish that venue is proper for each defendant separately. AGIS cannot, so it improperly lumps all three Defendants together for venue purposes. But no Defendant resides, has committed alleged acts of infringement, or has a regular and established place of business in this District. As such, under the test for venue case in patent cases recently affirmed by the Supreme Court and clarified by the Federal Circuit, this District is not a proper forum for this case. Thus, the Amended Complaint should be dismissed.

## II.     PROCEDURAL HISTORY: AGIS CANNOT ESTABLISH VENUE

On June 21, 2017, AGIS filed a complaint against ZTX and ZTC. Dkt. No. 1. On September 26, 2017, defendant ZTX filed a Motion to Dismiss, or in the alternative to Transfer (the "Original Motion," Dkt. No. 28). Rather than responding to the Original Motion, AGIS filed an Amended Complaint on October 17, 2017, alleging direct and indirect infringement of the Patents-in-Suit and adding ZTA as a defendant. *See* Dkt. No. 32 at ¶¶ 3, 23-83.

In the Amended Complaint, AGIS alleged that certain electronic devices (in particular, Android-based smartphones and tablets including the Tempo, Axon 7, Axon 7 mini, Blade V8 Pro, ZMax Pro, and ZMax 2) (collectively, the "Accused Devices") infringe the Patents-in-Suit,

---

[1] Defendant ZTE Corporation has not yet been served with the Complaint in this case or appeared in this case, and thus this Motion is on behalf of ZTX and ZTA only.

because these electronic devices are allegedly pre-configured or adapted with certain mapping or GPS-related functionality. Dkt. No. 32 at ¶¶ 22, 25-28, 34-41, 47-54, 60-67, 73-80.

AGIS alleges that venue is proper for ZTA in the EDTX based on 28 U.S.C. § 1400(b) because ZTA allegedly "established a call center in Plano, Texas" constituting "a regular and established place of business in this Judicial District." *Id*. at ¶ 9. But this is incorrect, at least because, as discussed in more detail below, the call center is not a "place of business" of ZTA. *See TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 137 S.Ct 1514 (2017); *In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017); *Brevel Prod. Corp. v. H & B Am. Corp*., 202 F. Supp. 824 (S.D.N.Y. 1962); *McGah v. V-M Corp*., 166 F. Supp. 662 (N.D. Ill. 1958).

AGIS also alleges that venue is proper for ZTX in the EDTX based on 28 U.S.C. § 1400(b) because "ZTE (TX) Inc. is incorporated in the State of Texas and, thus, resides in Texas." Dkt. No. 32 at ¶ 10. But this is also incorrect, because, as discussed in more detail below, ZTX is not a resident of the EDTX, has not committed acts of infringement in the EDTX, and furthermore lacks a regular and established place of business in the EDTX. *See TC Heartland LLC*, 137 S.Ct 1514; *In re Cray*, 871 F.3d 1355.

AGIS further alleges that "Defendants together have regular and established places of business in this judicial district, including in Plano, are deemed to reside in this judicial district, have committed acts of infringement in this judicial district, and/or have purposely transacted business involving the accused products in this judicial district." Dkt. No. 32 at ¶ 11. But this improperly treats ZTX, ZTA, and ZTC as a single entity for venue purposes. Venue, however, must be determined as to each defendant separately. *Magnacoustics, Inc. v. Resonance Tech. Co.*, No. 97–1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants venue and jurisdiction

2

requirements must be met as to *each defendant*.") (citing 17 Moore's Fed. Practice 3d § 111.12[4][b]) (emphasis added).

## III.   FACTUAL BACKGROUND: AGIS FILED SUIT IN AN IMPROPER VENUE

### A.   Plaintiff AGIS

AGIS was organized under Texas law on June 1, 2017, just weeks before filing five patent infringement suits in the EDTX. Ex. A. The patents-in-suit were assigned to AGIS shortly after formation. *See AGIS Software Dev. LLC v. Apple Inc.* Case No. 2:17-CV-516-JRG, Dkt. No. 53, at pp. 5-7 (E.D. Tex). According to its Certificate of Formation, AGIS has no managers; it is governed by AGIS Holdings Inc., which resides at the same address as AGIS, Inc. in Florida. *Id*. at 6. AGIS's organizer, Thomas C. Meriam, is an attorney located in New York. *Id*. AGIS's only connection to Texas appears to be a registered agent. *Id*. No AGIS entity appears to conduct any operations in the Eastern District of Texas. *Id*.

### B.   Defendant ZTE (TX) Inc.

ZTX is a wholly owned subsidiary of ZTE Hong Kong Ltd., which is in turn a wholly owned subsidiary of ZTC, an entity incorporated under the laws of the People's Republic of China. Shan Decl. ¶ 3. ZTX conducts research and development activities and provides technical marketing support for ZTC. *Id.* ¶ 4. ZTX's research and development activities include designing telecommunications devices and developing telecom technology standards, solutions, and applications for the next generation of telecommunications technology. *Id*. ZTX operates in the areas of wireline technology, wireless technology, microwave technology, and handset technology. *Id*. ZTC is the only customer of ZTX. *Id.* ¶ 5. ZTX does not provide any services to third parties other than ZTC. *Id.* ¶ 6.

Though ZTX is a Texas company, *Id.* ¶ 14, its principal place of business is located in Milpitas, California. *Id.* ¶ 13. ZTX maintains a server for storing technical documents and

agreements for ZTX in San Diego, California. *Id.* ¶ 16. ZTX stores documents relevant to the research agreements between ZTX and ZTC at ZTX's principal place of business in Milpitas, California. *Id.* ZTX also maintains offices in Durham, North Carolina; Morristown, New Jersey; San Diego, California, and Austin, Texas. *Id.* ¶ 13.

ZTX does not have, and does not advertise or represent that it has, a physical place of business in the EDTX. *Id.* ¶ 14. Indeed, ZTX does not have any offices, warehouses, stores, facilities, and bank accounts in the EDTX. *Id.* ZTX's registered agent, who filed ZTX's incorporation papers, is located at 2500 Dallas Parkway, Plano, Texas 75093, but the agent's office is not a ZTX place of business. *Id.*

Though ZTX has no offices here, ZTX does have fourteen employees living in the EDTX who work remotely from home. *Id.* Eleven of those employees live in Plano, Texas, and three live in Allen, Texas. *Id.* These employees are free to live wherever they choose, as far as ZTX is concerned. *Id.* As such, ZTX has not conditioned the employment of any ZTX employee upon continued residence in the EDTX or upon carrying out business of ZTX in the EDTX. *Id.* ZTX employees in Texas are principally concerned with technical marketing support and research and development activities relating to microelectronics. *Id.* ¶ 15. None of ZTX's employees in Texas are expected to have unique knowledge relevant to this case. *Id.*

### C.      Defendant ZTE (USA) Inc.

ZTA is a New Jersey Corporation with its principal place of business located in the Northern District of Texas, at 2425 North Central Expressway, Suite 800, Richardson, Texas. Wood Decl. ¶¶ 4, 5. ZTA is a wholly-owned subsidiary of ZTC. Dkt. No. 39.

ZTA has no regular and established place of business in the Eastern District of Texas. *Id.* ¶ 6. ZTA has no physical presence, such as a storefront, physical facility, or owned, leased, or

rented office space, in the Eastern District of Texas. *Id.* ¶ 7. ZTA has no bank accounts in the Eastern District of Texas. *Id.* ¶ 8. ZTA does not have a registered agent within the Eastern District of Texas. *Id.* ¶ 9. ZTA realizes no significant amount of direct revenue, or significant numbers of direct sales, to customers in the Eastern District of Texas. *Id.* ¶ 17. ZTA does not target the Eastern District of Texas with any non-charitable marketing or promotional efforts. *Id.* ¶ 18. ZTA does engage in generalized marketing and promotional efforts, but they are not targeted at the Eastern District. *Id.*

ZTA has employee(s) who live in the Eastern District of Texas, and one or more of those employee(s) may work from home. *Id.* ¶ 14. However, ZTA does not own, lease, or otherwise exercise possession or control over the homes of these employees. *Id.* Furthermore, these employees are free to live wherever they choose, as far as ZTA is concerned. *Id.* As such, ZTA has not conditioned the employment of any ZTA employee upon continued residence in the Eastern District of Texas or upon continued performance of ZTA business from his or her home in the Eastern District of Texas. *Id.*

ZTA does not advertise or represent, internally or externally, that it has a place of business in the Eastern District of Texas, or that the homes of these employees are "places of business" or "offices" of ZTA. *Id.* ¶ 15. ZTA does not store company products in the homes of its employees and customers cannot obtain products from ZTA's employee home offices. *Id.* ZTA has no employee salespeople who operate out of their homes within the Eastern District of Texas. *Id.* ¶ 13. ZTA does not employ a secretarial service within the Eastern District of Texas to assist employees working from their homes in the Eastern District of Texas. *Id.* ¶ 16.

While independent customer service representatives work on ZTA's behalf out of a call center located in the Eastern District of Texas, these independent customer service

representatives are not employees of ZTA, they are employees of iQor, an independent company, which is a vendor to ZTA. *Id.* ¶ 10. iQor services multiple other customers out of the call center, and ZTA is not the largest customer iQor services out of the call center. *Id.* ZTA does not own, lease, or rent the office space at the call center. *Id.* ¶ 11. ZTA does not own the equipment, computers, furniture, or office supplies for the call center. *Id.* ZTA does not store products at the call center. *Id.* iQor owns, operates, and controls the call center. ZTA employees may visit the call center, but are not stationed there full time. *Id.* ¶ 12.

ZTA did not select the location of the iQor call center. ZTA did not require companies bidding for the customer service contract to have a presence in any particular location, and entertained proposals from companies with facilities located within the Dallas-Fort Worth ("DFW"") Metro area, throughout Texas, and throughout the United States. Rayeksi Decl. ¶ 6. iQor independently chose Plano, Texas as the location for its new iQor facility. ZTA did not dictate, request or influence iQor's selection of the location for its call-center facility. *Id.* ¶ 7. There is no ZTA signage at the iQor call center. *Id.* ¶ 11.

ZTA does not control the operation of the iQor call center. The building housing the call center displays the iQor logo. *Id.* ¶ 11. iQor is responsible for hiring all customer service representatives that work in its Plano call center. *Id.* ¶ 12. iQor advertises for job applicants, receives and reviews their application forms, interviews them, and makes the hiring decisions. *Id.* ZTA has no role in the hiring of customer service representatives that work in the Plano call center. *Id.* iQor decides how much to pay the customer service representatives that work in its Plano call center, sets their work schedules, determines their specific assignments, reviews their performance, and determines their benefits, raises and promotions. iQor issues their paychecks. *Id.* ¶ 13. ZTA has no role in any of these activities. *Id.* ¶ 13. iQor trains its customer service

representatives in Plano. *Id.* ¶ 14. ZTA provides iQor with materials that explain the operation of, or changes to, ZTA products. *Id.* iQor uses this information to create its own training materials, and trains its customer service representatives. *Id.* ZTA has no role in determining a dress code for customer service representatives in its Plano call center. *Id.* ¶ 15. No customer service representative is required to wear any clothing or accessory bearing ZTA's name or logo. *Id.* It is not typical for call center representatives to wear apparel with the ZTE logo. *Id.*

ZTA does not maintain an office at the iQor facility in Plano for employees. *Id.* ¶ 16. ZTA employees may visit the call center at times, but they work from a cubicle set aside for visitors and are not stationed there full time. *See* Rayeksi Decl. ¶ 16; Wood Decl. ¶ 12.

## IV.     STATEMENT OF LAW

This case should be dismissed for improper venue under Federal Rules of Civil Procedure 12(b)(3).

### A.     Venue In Patent Cases Can Only Exists If Each Defendant Resides Or Has A Regular And Established Place of Business In the Forum

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland LLC,* 137 S. Ct. at 1516 (quoting 28 U.S.C. § 1400(b)). "The Supreme Court changed the controlling law when it decided *TC Heartland* . . . by severing § 1400(b) from § 1391(c) . . . ." *In re Micron Tech., Inc.,* No. 2017-138, 2017 WL 5474215, *6 (Fed. Cir. Nov. 15, 2017). Further, in an action involving multiple defendants, venue and jurisdiction requirements must be met as to each defendant. *Magnacoustics,* 1997 WL 592863 at *1. When formal separation of entities is preserved, activities of a parent corporation do not establish venue over a wholly-owned subsidiary of the parent corporation. *Blue Spike,*

*LLC v. Caterpillar, Inc.*, 6:16-CV-01361-RWS, 2017 WL 4129321, *2-3 (E.D. Tex. Sep. 9, 2017).

1.      **Residency Of Defendants In Patent Cases Is Determined On A District-by-District Basis, Not A State-By-State Basis**

By the plain terms of the statute, the first way to establish venue in patent infringement cases is to file suit "in *the judicial district* where the defendant resides." 28 U.S.C. §1400(b) (emphasis added). The plain language of the statute and Supreme Court precedent make clear that residence is established in *judicial districts*, not entire states:

> [I]n a State containing more than one district, actions not local should "be brought in the district in which the defendant resides …" The whole purport and effect of [the then-venue statute at issue] … was not to enlarge, but to restrict and distribute, jurisdiction. It applied only to a State containing two or more districts, and directed suits against citizens of such a State to be brought in that district thereof in which they… resided. It did not subject defendants to any new liability to be sued out of the State of which they were citizens, but simply prescribed in which district of that State they might be sued.

*Shaw v. Quincy Mining Co.,* 145 U.S. 444, 447-448 (1892). Thus, a corporation can "be sued *only in the State and district* in which it has been incorporated." *Id.* at 449 (emphasis added).

The Supreme Court has confirmed the principle announced in *Shaw*. For example, in *Stonite Prods. Co. v. Melvin Lloyd Co.,* 315 U.S. 561 (1942), the Court applied the principle in a patent case, interpreting 28 U.S.C. §1400(b)'s predecessor, 28 U.S.C. (1940 ed.) §109. Defendant Stonite Products was a Pennsylvania corporation with its principal place of business in the Eastern District of Pennsylvania. *Melvin Lloyd Co. v. Stonite Prods. Co.*, 119 F.2d 883, 884, (3d Cir. 1941), *rev'd,* 315 U.S. 561 (1942). But in *Stonite Products Co.*, the Court affirmed that venue over defendant Stonite Products was improper in Western District of Pennsylvania. *Stonite Prods.,* 315 U.S. at 563. The Court found that Stonite Products was only "an inhabitant of the Eastern District of Pennsylvania," not of every district in the state. *Id.* at 562. Like 28 U.S.C.

§1400(b) today, the similarly-worded predecessor statute restricted venue in a patent case to "the *district* of which the defendant is an inhabitant[.]" *Id.* at 562 n.1 (emphasis added).

*Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957) supports the conclusion that the principle of *Shaw* and *Stonite* was not affected by the recodification of 28 U.S.C. (1940 ed.) §109 into 28 U.S.C. §1400(b). In *Fourco*, the defendant was sued outside its state of incorporation, and the Court relied on *Shaw* for the proposition that, in the context of venue in patent cases, "resides" means the "state of incorporation only," contrasting the restrictive patent venue statute with the permissive general venue statue,[2] which made corporation suable in judicial districts in which they were merely doing business. *Id.* at 226. In making this comparison, the Court did not *expand* the meaning of "resides" established in *Shaw*. *See id.* at 226-229. The Supreme Court reaffirmed *Fourco* in *TC Heartland LLC,* 137 S. Ct. at 1516, confirming that 28 U.S.C. § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and … is not to be supplemented by … § 1391(c)." *TC Heartland LLC,* 137 S. Ct. at 1519 (quoting *Fourco Glass*, 353 U.S. at 229).

Thus, for purposes of patent venue, a domestic corporation "resides" only in the judicial district in its state of incorporation that includes its principal place of business; not in districts in other States, and not in other districts *within* its State of incorporation. *See* 8-21 Chisum on Patents, §21.02 (2017) ("The weight of authority indicates that a corporation is a resident only of the district in which it has its principal office." (citing *Vibber v. United States Rubber Co.,* 255 F. Supp. 47 (S.D. N.Y. 1966) and *California Irrigation Servs., Inc. v. Bartron Corp.*, 654 F. Supp. 1 (N.D. Calif. 1985) ("a defendant corporation resides in the district in its state of incorporation where its principal place of business is")). *Accord "A" Co. v. Consyne Corp.*, 191 U.S.P.Q.

---

[2] 28 U.S.C. § 1391(c).

(BNA) 126 (S.D.CA 1975); *Action Commc'ns. Sys. Inc. v. Datapoint Corp.,* 426 F. Supp. 973,

974-5 (N.D. Tex. 1977); *Samsonite Corp. v. Texas Imperial Am., Inc.*, 218 U.S.P.Q. (BNA) 325

(N.D. Tex. 1982); *Sterling Drug Inc. v. Intermedics, Inc.*, 1986 U.S. Dist LEXIS 31320 (W.D.

Tex. 1986)).[3]

---

[3] While this Court recently held in *Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-00186-JRG, 2017 WL 3187473, at *2 (E.D. Tex. July 26, 2017) that a "corporate defendant resides in each [] judicial district [within the state of incorporation] for venue purposes," other recent decisions by this Court conflict with that holding. For instance, in *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, this Court stated that "TC Heartland clarified that venue is proper under § 1400(b) 'in the judicial district where the defendant resides . . . ,' and that the term 'resides' refers 'only to the State of incorporation.'" No. 2:15-CV-37-RWS-RSP, 2017 WL 2651618, at *18 (E.D. Tex. June 20, 2017), report and recommendation adopted, No. 2:15-CV-00037-RWS, 2017 WL 4693971 (E.D. Tex. July 31, 2017) (citations omitted). Thus, under *Elbit¸* venue would only be proper under §1400(b) "in the judicial district where the defendant resides in the state of incorporation." This Court's decision in *Blue Spike, LLC v. Nook Digital, LLC*, also supports an interpretation of *TC Heartland* that residence only exists in the state of incorporation, but not in *every* district in that state. No. 6:16-CV-1361-RWS-JDL, 2017 WL 3263871 (E.D. Tex. July 28, 2017), report and recommendation adopted sub nom. *Blue Spike, LLC v. Caterpillar, Inc*., No. 6:16-CV-01361-RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017). Specifically, the *Blue Spike v. Nook* Court stated that "[u]nder § 1400(b), venue is only proper (1) in **_the_** district in which the defendant resides or (2) in **_a_** district where the defendant has committed acts of infringement and has a regular and established place of business," using the definite article "the" for residency, and thus indicating there can only be one district for residence, but the indefinite article "a" for districts where acts of infringement or places of business exist, as those could exist in multiple districts. 2017 WL 3263871 at *2 (emphasis added). The *Elbit* and *Blue Spike v. Nook* decisions are consistent with other decisions indicating that venue over corporate defendants is determined on a district-by-district basis, and that a defendant can have only one residence. *See, e.g., Sperry Prod. v. Ass'n of Am. Railroads,* 132 F.2d 408, 411 (2d Cir. 1942) ("In the case of a corporation we may assume that it can be an 'inhabitant' only of the state of its incorporation, *Neirbo Co. V. Bethlehem Shipbuilding Corporation,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437; but even so, that will not serve as a test [for venue] if there several judicial districts in that state.") (Learned Hand, J.); *Portsmouth Baseball Corp v. Frick,* 132 F. Supp. 922, 925 (S.D.N.Y. 1955) (confirming that the *Sperry* Court "held that a corporation was an 'inhabitant', within the meaning of the [patent venue statute], only at the place where it had its principal place of business within its state of incorporation."); *Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen,* 387 U.S. 556, 558 (1967) ("[F]or almost 80 years [before the passage of the 1966 amendment to Section 1391] proper venue in federal-question cases was limited to **_the district_** of the defendant's residence, whether the defendant was an individual, a corporation, or an unincorporated association such as this respondent.") (emphasis added). Recent Supreme Court guidance on venue statues also confirms that venue is a district-by-district analysis, not state-by-state, as with jurisdictional inquiries as to where a defendant is at "home." *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1555, 1558 (2017) (noting that "Congress generally uses the expression, where suit 'may be brought,' to indicate the federal *districts* in which venue is proper" but a state court may exercise general jurisdiction over out-of-state corporations when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").

2.      **Venue Over Non-Resident Defendants Requires A Regular And Established Place Of Business In The Forum**

The second way to establish venue in patent cases under § 1400(b) is to file suit "where the defendant has committed acts of infringement and has a regular and established place of business."

The Supreme Court's *TC Heartland* decision does not define "a regular and established place of business" pursuant to § 1400(b). However, the Federal Circuit recently defined that phrase, finding that § 1400(b) requires that: (1) "a defendant has" a (2) "place of business" that is (3) "regular" and "established." *In re Cray*, 871 F.3d at 1362. All three of these requirements must be present for proper venue to exist in a district. *Id*. Thus, the Federal Circuit instructed, there first must be a physical place of business in the district, not merely a virtual space or electronic communications between persons in the district. *Id*. Second, the place of business must be regular and established–sporadic activity or presence cannot create venue. *Id*. Third, the regular and established place of business must be a place *of the defendant*, not solely a place of the defendant's employee or of an entity that is not the specific defendant. *Id*. at 1363.

Considerations relevant to whether a place is attributable to the defendant include: (1) whether the defendant exercises possession or control over the place; (2) whether the defendant conditioned employment upon an employee's continued residence at the place or continued performance of business from the place; and (3) whether the defendant holds the place out as a place for its business. *Id*. Therefore, when an employer does not own, lease, or rent an employee's home, select the location of the employee's home, direct the employee to store inventory or conduct business at the employee's home, or condition employment or support upon the maintenance of the employee's home as a place of business of the employee, the employee's home is not attributable to the employer. *Id*. at 1364-66. Moreover, an employee's home is not a

place of business for the employer merely because the employer provides a salary, administrative support, or reimbursement of phone, internet, and business-related travel expenses. *Id*.

An agency relationship is not sufficient to create venue. For example, "the relationship of manufacturer and soliciting agent, without more (e.g., payment of office expenses, maintaining stocks of merchandise in the forum district, consummated sales in the forum district), does not render the business of the solicitor a 'regular and established place of business' of the manufacturer." *McGah,* 166 F. Supp. at 666. Similarly, "[t]he mere fact that defendant hires a sales representative who in turn rents offices to sell defendant's products is insufficient," even when the sales representative advertises defendant's products and processes complaints for the defendant. *Brevel Prod. Corp.*, 202 F. Supp. at 826-27.

The mere presence of supervisory employees in a district is also not sufficient to create venue. *L. D. Schreiber Cheese Co., Inc. v. Clearfield Cheese Co*., 495 F. Supp. 313, 317 (W.D. Pa. 1980). For example, the presence of "two executive employees" acting as liaisons between the defendant and another company is not sufficient to create a "regular and established place of business" in that district. *Id.* at 318.

## V.   ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED

AGIS's assertion regarding ZTX's (alleged) residence in the EDTX is incorrect and must be disregarded. Dkt. No. 32 at ¶10. Even as a Texas Corporation, ZTX is only subject to venue in Western District of Texas ("WDTX"). Moreover, ZTX has not committed the (alleged) acts of infringement in the EDTX (or anywhere) and lacks a regular and established place of business in this District. *See* Shan Decl. at ¶ 14. Therefore, ZTX is not properly venued in the EDTX.[4] ZTA

---

[4] The Report And Recommendation Of United States Magistrate Judge in *American GNC Corp.* asserts that ZTA conceded that ZTE is properly venued in the EDTX. *American GNC Corp. v. ZTE Corp., et al.*, Case No. 4:17-cv-

is a New Jersey corporation and therefore does not reside in the EDTX. Furthermore, ZTA lacks a "regular and established place of business" in the EDTX, as the iQor call center is not a place of business of ZTA.[5]

### A.    The Amended Complaint Should Be Dismissed For Improper Venue

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland,* 137 S. Ct. at 1516 (quoting 28 U.S.C. § 1400(b)). The Federal Circuit recently held that a "regular and established place of business" must be a physical place of business and must be a place of the defendant, not solely a place of the defendant's employee. *In re Cray*, 871 F.3d at 1363-65. Moreover, in an action involving multiple defendants, venue and jurisdiction requirements must be met as to each defendant. *Magnacoustics, Inc.*, 1997 WL 592863, at *1. When formal separation of entities is preserved, activities of a parent corporation do not establish venue over a wholly-owned subsidiary of the parent corporation. *Blue Spike, LLC.*, 2017 WL 4129321 at *2-3.

Following the Supreme Court's decision in *TC Heartland* and the Federal Circuit's decision in *In re Cray*, this Court does not have venue over ZTX or ZTA.

---

00620, Dkt. No. 77, at p. 5 (E.D. Tex. Oct. 4, 2017). Defendants respectfully disagree, and ZTX does not concede that venue is proper in EDTX. In the Reply cited by the Magistrate, ZTA disputed the propriety of venue as to ZTA in the EDTX and simply stated that "[i]t makes no difference whether ZTE (TX) Inc. is subject to suit in this district." *American GNC Corp. v. ZTE Corp., et al.*, Case No. 4:17-cv-00620, Dkt. No. 29, at ¶ 2 (E.D. Tex. Apr. 21, 2017). While that statement is not a concession as to venue, it was also notably made before *TC Heartland* changed the law regarding venue in patent cases, nullifying any concession under current law.

[5] The Court held in *American GNC Corp.* that the iQor call center was a place of business of ZTA. *American GNC Corp. v. ZTE Corp., et al.*, Case No. 4:17-cv-00620, Dkt. No. 91, at p. 2 (E.D. Tex. Nov. 7, 2017). But as discussed herein, an agency relationship is not sufficient to establish venue. *Brevel Prod. Corp.,* 202 F. Supp. at 826-27; *McGah*, 166 F. Supp. at 666. Additionally, the Court's Order in *American GNC Corp.* may be subject to appeal or mandamus.

1.      **Venue is Improper Under the First Prong of 28 U.S.C. § 1400(b)**

As discussed above, under the first prong of 28 U.S.C. § 1400(b), venue for a defendant in a patent case is proper in the district where the defendant resides. *Stonite Prods.*, 315 U.S. at 562-67; *see also Fourco Glass*, 353 U.S. at 227-228 (affirming that subsequent Congressional action did not affect *Stonite's* holding regarding the limits to venue in patent cases); *TC Heartland LLC*, 137 S.Ct. at 1520-21 (affirming that subsequent Congressional action did not affect *Fourco's* holding regarding the limits to venue in patent cases).

### a.      ZTA Does Not Reside In This District.

A corporation may not be sued under the first prong of the venue statute (residence) outside its state of incorporation. *See TC Heartland LLC*, 137 S.Ct. at 1516-17. ZTA is a New Jersey Corporation. Wood Decl. ¶ 4. Therefore, venue cannot be supported by residency in this District. *See* 28 U.S.C. § 1400(b); *Fourco Glass*, 353 U.S. at 228-29.

### b.      ZTX Does Not Reside In This District.

A corporation may only be sued under the first prong of the venue statute (residence) within its state of incorporation and, within that state, only in the judicial district where its principal place of business is located. *Action Commc'ns Sys.*, 426 F. Supp. at 974-975.

ZTX does not have its principle place of business in the EDTX. *See* Shan Decl. at ¶¶ 13, 14. The Amended Complaint does not even allege as much. Instead, the Amended Complaint incorrectly alleges that the ZTX's principal place of business is at 2500 Dallas Parkway, Plano, Texas 75093. Dkt. No. 32 at ¶4. That address is not a ZTX office at all. Instead, that address belongs to Ferguson, Braswell & Fraser, PC, the law firm that serves as ZTX's registered agent and that filed ZTX's incorporation papers. Shan Decl. ¶ 14. Venue for an entity does not lie based on the location of an entity's registered agent. *See* 28 U.S.C. § 1400(b).

Contrary to AGIS's claims, ZTX's principal place of business is located in Milpitas, California. Shan Decl. ¶ 13. An office in Austin, Texas, is the only physical place of business maintained by ZTX in Texas. *Id.* ¶ 13. Therefore, venue cannot be supported by residency in the EDTX. *See* 28 U.S.C. § 1400 (b); *Fourco Glass*, 353 U.S. at 228-29; *Stonite Products,* 315 U.S. at 562; *Shaw,* 145 U.S. at 447-448; *Action Commc'ns Sys.,* 426 F. Supp. at 974-975.

### 2.     Venue is Improper for the Defendants under the Second Prong of 28 U.S.C. § 1400(b)

As discussed above, under the second prong of 28 U.S.C. § 1400(b), venue for a defendant in a patent case is proper in any district in which the defendant has committed acts of infringement and maintains a regular and established place of business. A regular and established place of business must be a physical place of business in the district, not merely a virtual space or electronic communications between persons in the district. *In re Cray*, 871 F.3d at 1362. Furthermore, the place of business must be regular and established–sporadic activity or presence cannot create venue. *Id*. Finally, the regular and established place of business must be a place *of the defendant*, not solely a place of the defendant's employee or of an entity that is not the specific defendant. *Id*. at 1363. All three of these requirements must be present for proper venue to exist in a district for a defendant. *Id*. at 1360.

### a.     ZTX has not Committed Acts of Infringement in the District and Does not Maintain A Regular And Established Place Of Business In This District

ZTX has not committed acts of infringement in the EDTX. ZTX conducts research and development activities and provides technical marketing support for ZTC. Shan Decl. ¶ 4. The only customer of ZTX is ZTC, and ZTX does not provide any services to third parties other than ZTC. *Id.* at ¶¶ 5, 6. With its focus on R&D, ZTX does not manufacture or make, use, offer to sell, or sell any products in the EDTX, including without limitation any "Accused Devices." *Id.*

15

¶¶ 8-10. ZTX does not import any products into the EDTX for third-party demonstrations, sales, offers for sale, qualification testing, or other commercial purposes. *Id*. ¶ 11. ZTX does not use any products in the EDTX, other than as an end-user of consumer wireless equipment similar to any other US consumer or company which conducts business by phone. *Id*. ¶ 12. Indeed, any relevant activity performed by ZTX with respect to alleged infringement occurred in a U.S. judicial district other than the EDTX, such as the Northern District of California ("NDCA"). *See id*. ¶¶ 13, 14; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (In patent cases, "the bulk of the relevant evidence usually comes from the accused infringer."). For at least this reason, venue is not proper in the EDTX for ZTX.

Furthermore, ZTX does not maintain a "regular place of business" in the EDTX, especially when applying the test set forth by the Federal Circuit in *In re Cray. See In re Cray*, 871 F.3d at 1361-64. The petitioner in *In re Cray* did not have a physical place of business to support venue in the EDTX. *Id*. at 1357. Instead, the petitioner paid a salary to an employee in the EDTX, and provided this employee administrative support and reimbursement for phone, internet, and business-related travel expenses. *Id*. at 1364-65. But the Federal Circuit held that the employee's home was not a regular and established place of business of the petitioner. *Id*. at 1365-67. The petitioner did not own, lease, or rent any portion of the employee's home; select the location of the employee's home; store inventory or conduct demonstrations at the employee's home; or condition the employee's employment or support on the maintenance of an EDTX location. *Id*. Accordingly, the employee's home was not a "regular and established place of business" of the petitioner, which supports venue, but rather "a physical location where an employee of the [petitioner] carries on certain work for his employer," which does not. *Id*. at 1366.

16

Similarly, ZTX does not have any physical place of business in the EDTX. Shan Decl. ¶ 14. Consistently, ZTX does not advertise or represent that it has a place of business in the EDTX. *Id*. Accordingly, ZTX lacks a place of business that is "regular" and "established" in this District. While ZTX has fourteen employees working remotely from home here, ZTX does not own, lease, or otherwise exercise possession or control over the homes of these employees. *Id*. These employees are free to live wherever they choose. *Id*. Further, ZTX has not conditioned the employment of any employee upon continued residence in the EDTX or upon continued performance of ZTX business from his or her home in the EDTX. *Id*. ZTX's registered agent, who filed ZTX's incorporation papers, is in Plano, Texas, but the agent's office is not a ZTX place of business. *Id*.

Thus, like the petitioner in *In re Cray*, ZTX lacks a regular and established place of business within the EDTX, which is required for venue. Accordingly, venue is not proper in this District and the case should be dismissed. *See* 28 U.S.C. § 1400 (b); *In re Cray*, 871 F.3d at 1364-67.

### b.  ZTA Does not Maintain A Regular And Established Place Of Business In This District

ZTA does not maintain a "regular and established place of business" in the EDTX.[6] When applying the test set forth by the Federal Circuit in *In re Cray. See In re Cray*, 871 F.3d at 1361-64. As discussed above, the petitioner in *In re Cray* paid a salary to an employee in the EDTX, and provided this employee administrative support and reimbursement for phone, internet, and business-related travel expenses, but did not have a physical place of business to support venue in the EDTX. *Id*. at 1357, 1361-67. Like the home of the employee in *In re Cray*,

---

[6] *See* footnote 4, *supra*.

the iQor call center is not a place of business of ZTA, much less a regular and established place of business of ZTA.

For example, ZTA does not exercise possession or control over the iQor call center. *See In re Cray* at 1363. ZTA does not own, lease, or rent the office space at the iQor call center. Wood Decl. ¶ 11. ZTA has no role in the hiring of customer service representatives that work in the iQor call center. Rayeksi Decl. ¶ 12. ZTA does not determine work schedules or assignments; review performance; determine pay rates, benefits, raises and promotions; or issue paychecks for the customer service representatives at the iQor call center. *Id.* ¶ 13. ZTA has no role in determining a dress code for customer service representatives in the iQor call center. *Id.* ¶ 15.

Instead, iQor, an independent company, which is a vendor to ZTA, owns, operates, and controls the call center. Wood Decl. ¶ 12. iQor is responsible for hiring all customer service representatives that work in its Plano call center. Rayeksi Decl. ¶ 12. iQor advertises for job applicants, receives and reviews their application forms, interviews them, and makes the hiring decisions. *Id.* ¶ 12. iQor decides how much to pay the customer service representatives that work in its Plano call center, sets their work schedules, determines their specific assignments, reviews their performance, and determines their benefits, raises and promotions. *Id.* ¶ 13. iQor issues their paychecks. *Id.* ¶ 13. iQor creates its own training materials and trains its own customer service representatives. *Id.* ¶ 14.

ZTA has not conditioned the retention of iQor upon the continued performance of business from iQor's call center in Plano, Texas. *Id.* ¶ 7; *see In re Cray*, 871 F.3d at 1363. ZTA did not select the location of the iQor call center. Rayeksi Decl. ¶ 7. ZTA did not require companies bidding for the customer service contract to have a presence in any particular location, and entertained proposals from companies with facilities located within the Dallas-Fort

Worth ("DFW"") Metro area, throughout Texas, and throughout the United States. *Id.* ¶ 6. iQor independently chose Plano, Texas as the location for its new iQor facility. ZTA did not dictate, request or influence iQor's selection of the location for its call-center facility. *Id.* ¶ 7. There is no ZTA signage at the iQor call center. *Id.* ¶ 11.

ZTA does not hold the iQor call center out as a place of its business. *See In re Cray*, 871 F.3d at 1363-64. There is no ZTA signage at the iQor call center and the building housing the call center displays the iQor logo. Rayeksi Decl. ¶ 11. No customer service representative is required to wear any clothing or accessory bearing ZTA's name or logo, nor is not typical for call center representatives to wear apparel with the ZTE logo. *Id.* ¶ 15. ZTA does not maintain an office at the iQor facility in Plano for employees. *Id.* ¶ 16. And though ZTA employees may visit the call center, they are not stationed there full time, Wood Decl. ¶ 12, and they work from a cubicle set aside for visitors. Rayeksi Decl. ¶ 16. Thus, the iQor call center is not a regular and established place of business for ZTA. *In re Cray* at  1364-67.

Whether ZTA delegated call center operations to iQor does not affect this analysis. Like the relationship between the manufacturer and soliciting agent in *McGah*, the relationship between ZTA and iQor, without more, does not render the iQor call center a 'regular and established place of business' of ZTA. *McGah*, 166 F. Supp. at 666. Similarly, assisting customers with ZTA products or working to build brand loyalty does not render the iQor call center a 'regular and established place of business' of ZTA, any more than advertising products and processing complaints rendered the sales representative's office a regular and established place of business of the defendant in *Brevel*. 202 F. Supp. 825-27.

Whether ZTA employees are present at the iQor call center to serve as liaisons with iQor does not affect this analysis either. As in *L. D. Schreiber Cheese*, the presence of a small number

of employees acting as liaisons between the ZTA and another independent entity (iQor) are not sufficient to create a "regular and established place of business" of ZTA in this District. *See L. D. Schreiber Cheese Co.*, 495 F. Supp. at 317-18.

Thus, like the petitioner in *In re Cray*, both ZTA and ZTX lack a regular and established place of business within the EDTX, and both must have places of business here for venue to be proper. *Magnacoustics, Inc.*, 1997 WL 592863, at *1. Accordingly, venue is not proper in this District and the case should be dismissed. *See* 28 U.S.C. § 1400 (b); *In re Cray*, 871 F.3d at 1364-67.

### B.    Should The Court Not Dismiss This Case, It Should Be Transferred To The Northern District of California

This case should be dismissed for improper venue. Alternatively, if the Court declines to dismiss the Amended Complaint, ZTX and ZTA respectfully request transfer of this case to the NDCA, a proper and much more convenient venue.

A district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406(a). To determine whether a case should be transferred, the court pursues a two-pronged inquiry. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (directing the EDTX to transfer).

First, the court determines whether the case originally could have been brought in the proposed transferee district. *Id.* As discussed above, a patent infringement action may be brought "where the defendant resides, or where the defendant has [allegedly] committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). If the threshold inquiry is met, the court then weighs the relative convenience of the transferee district and the transferor district, based on a number of private and public interest factors. *See, e.g.*,

*Indus. Tech. Research Inst. v. LG Corp.*, et al., No. 6:10-cv-628 LED-JDL, 2011 WL 10622246,

at *2 (E.D. Tex. Nov. 29, 2011) (granting motion to transfer to District of New Jersey). The

private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability

of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for

willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious,

and inexpensive." *Volkswagen of Am., Inc.*, 545 F.3d at 315. The public interest factors are "(1)

the administrative difficulties flowing from court congestion; (2) the local interest in having

localized interests decided at home; (3) the familiarity of the forum with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of

foreign law." *Id.*

      "Typically, the most important of the above factors is whether substantial inconvenience

will be visited upon key fact witnesses should the court deny transfer." *Frederick v. Advanced

Fin. Sols., Inc.*, 558 F.Supp.2d 699, 704 (E.D. Tex. 2007). The plaintiff's choice of forum,

however, is entitled to no weight in determining whether to transfer venue. *In re TS Tech USA

Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating

the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."). This is particularly

true where a plaintiff's recent and ephemeral contacts with a forum "are nothing more than a

construct for litigation." *See, e.g.*, *Network Protection Scis., LLC v. Juniper Networks, Inc.*, No.

10-cv-00224, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) (citing *In re Microsoft Corp.*,

630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir.

2010)).

      "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few

or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant

a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). Thus, even though "[t]he analysis may not show that the transferee forum is *far* more convenient[,] . . . that is not what is required. With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'" *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

This case could have been brought in the NDCA, where ZTX has its principal place of business and ZTA has an office. Shan Decl. at ¶ 13; Yee Decl. at ¶ 1. Moreover, the convenience factors weigh in favor of transfer, with no factor weighing against it. Defendants therefore request that the Court transfer this case to the NDCA.

1.      **The Private Interest Factors Favor Transfer To The Northern District of California Or The Western District of Texas**

a.      **The Relative Ease of Access To Sources of Proof Strongly Favors Transfer**

Accessibility to sources of proof is an important private interest factor that weighs heavily in favor of transfer. *Volkswagen of Am., Inc.*, 545 F.3d at 315. "The critical inquiry 'is relative ease of access, not absolute ease of access.'" *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (citations omitted). Here, the sources of evidence in this case are far more accessible in the NDCA.

ZTX has its principal place of business in the NDCA. And in patent cases, "the bulk of relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Most, if not all, of Defendant's witnesses and physical evidence relating to the relationship between ZTX and ZTC are located at ZTX's principal place of business in Milpitas, California, in the NDCA, making the NDCA clearly the most convenient venue for the present case. For example, ZTX stores documents relevant to the research agreements between ZTX and ZTC at ZTX's principal place of business in Milpitas, California. Shan Decl. ¶ 16. And the ZTX office

responsible for handsets and the server for ZTX's storing technical documents and agreements is located at ZTX's San Diego, California office.[7] *Id.* Thus, the NDCA is much more convenient for ZTX's California-based employees.

Furthermore, it would be much more convenient for the expected witnesses from ZTX's principal office in Milpitas, California to attend trial for these matters in the NDCA, where ZTX has an office, than it would be for them to travel to Marshall, Texas. *Id.* ¶ 17. Convenient, non-stop air service exists between San Jose, California, near ZTX's headquarters in Milpitas, California, and Austin, Texas. *Id.*

ZTE-related employees with relevant knowledge are located in California, supporting transfer of this case to NDCA. The Amended Complaint implicates Google Maps, Android Device Manager, Android Messenger, Google Hangouts, Google Plus, and Google Latitude (the "Proprietary Android Applications") in the alleged infringement of the Patents-in-Suit.[8] Dkt. No. 32 at ¶ 22, *see also* 36, 49, 62, 75. The ZTE-related personnel located in the United States and responsible for interacting with Google on Google applications and Google Android issues are located in the San Francisco Bay Area or in San Diego. Yee Decl. ¶ 9. Although ZTA has its principle place of business in Richardson, Texas, there are no ZTE-related employees in Richardson, Texas who are involved in the technical integration of the Proprietary Android Applications into ZTA's devices. Yee Decl. ¶ 10.

---

[7]That some of ZTX's relevant personnel and documentation may be located outside the Northern District of California does not alter the balance against transfer. *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 10-cv-00364, 2012 WL 506669, at *4 (E.D. Tex. Feb. 15, 2012) ("That there may be some relevant sources of proof spread outside of the Northern District of California does not rebut the Defendants' showing that the Northern District of California is a clearly more convenient forum."); *In re Toyota Motor Corp.*, 747 F.3d at 1340 ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.")

[8] AGIS Software informed Defendants that "Find My Phone" was erroneously listed among the android applications in the Amended Complaint, so it is not addressed here.

Expected third-party witnesses and evidence are also located in California, tipping the transfer analysis further in favor of the NDCA. For instance, the Amended Complaint states that "non-party Google, Inc. ('Google') licenses the Android operating system to third parties, including Defendants, who design their own products that utilize the Android operating system." Dkt. No. 32 at ¶ 21. But the Proprietary Android Applications implicated by the Amended Complaint are proprietary Google applications. Yee Decl. ¶ 6. Google provides these applications to ZTC as a black box that is merely loaded onto the ZTA Android products without modification by ZTC. *Id.* ZTC does not do any development work or customization concerning the Proprietary Android Applications. *Id.* Thus ZTA does not have any source code for the Proprietary Android Applications. *Id.* ¶ 7. The relevant source code and detailed technical information resides with Google Inc., not ZTA. *Id.* ZTA does not have any substantive technical knowledge, documents or other detailed information describing the specifics of how the Proprietary Android Applications work or interact with Google servers. *Id.* Google's headquarters are in Mountain View, California, in the NDCA. *See Mountain View (Global HQ),* Google Careers, https://careers.google.com/locations/mountain-view/ (last visited Nov. 19, 2017). Thus third-party witnesses and evidence concerning the operation of the Proprietary Android Applications are located in the NDCA.

AGIS also alleges that ZTX and ZTA indirectly infringe through Boost Mobile's website. *See* Dkt. No. 32 at ¶ 27. Boost Mobile's headquarters are in Irvine, California. *See Boost Mobile Corporate Office Headquarters HQ,* CorporateOfficeHeadquarters.com, http://www.corporateofficeheadquarters.com/2011/07/boost-mobile.html (last visited Nov. 19, 2017). It would be much easier to access sources of proof from this third party from the NDCA than this District.

On the other hand, if AGIS has evidence or witnesses relevant to the issues in dispute in the present cases is located in the EDTX, it is likely minimal—favoring transfer. *Groupchatter, LLC v. Itron, Inc.*, No. 15-900, 2016 WL 2758480, at *3 (E.D. Tex. May 12, 2016) (granting motion to transfer due to the lack of relevant evidence in the EDTX); *Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al.*, No. 5:16-cv-11-CMC, 2016 WL 4424967 (E.D. Tex. July 21, 2016) (same). AGIS appears to have been formed on June 1, 2017, just weeks before filing five patent infringement suits in the EDTX. Ex. A. AGIS, Inc., the licensor of the Patents-in-Suit, is located in Jupiter, Florida. *See* About – AGIS, Inc., www.agisinc.com/about/ (last visited Nov. 19, 2017). Presumably, AGIS's relevant sources of proof are located there as well, outside the EDTX.

Thus, this indicates a "classic case where the plaintiff is attempting to game the system" in anticipation of litigation, with its weak connection to this District. *Zimmer Holdings, Inc.*, 609 F.3d at 1381-82 (directing the EDTX to transfer). "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *Microsoft Corp.*, 630 F.3d at 1364 (ordering transfer where plaintiff incorporated under Texas laws and opened an office in Tyler shortly before filing suit). The Federal Circuit has also made clear that a Plaintiff cannot manufacture ties to Texas for venue. *See In re Apple, Inc.*, 456 Fed.Appx. 907, 908–09, 2012 WL 112893, at *1 (Fed. Cir. 2012) ("[C]ourts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'") (citing *Microsoft Corp.*, 630 F.3d at 1364). Accordingly, the first private interest factor strongly favors transfer.

### b.     The Availability Of Compulsory Process Favors Transfer

Availability of compulsory process to secure the attendance of non-party witnesses weighs in favor of transfer. *See Volkswagen of Am.*, 545 F.3d at 315-16. A transferee "venue

with usable subpoena power [] weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. As mentioned, Google's headquarters are in Mountain View, California, in the NDCA. Thus, compulsory process would be available in the NDCA to ensure the attendance at trial of non-party Google witnesses. *See* Fed. R. Civ. P. 45(c)(1)(A). And this Court has found that compulsory process over third-parties who provide the relevant technology "weighs heavily in favor of transfer," even if no particular third-party witnesses who would be subject to compulsory process have been identified. *See Touchscreen Gestures, LLC v. HTC Corp.*, 2013 WL 12204558, *4-5 (E.D. Tex. Mar. 27, 2013). Because the Amended Complaint implicates Google's Android operating system and several Google smartphone applications, the testimony of these witnesses may prove crucial. As noted above, the Proprietary Android Applications are proprietary Google applications. Yee Decl. ¶ 6. The relevant source code and detailed technical information resides with Google Inc., not ZTA. *Id.* ¶ 7. And ZTA does not have any substantive technical knowledge, documents or other detailed information describing the specifics of how the Proprietary Android Applications work or interact with Google servers. *Id.* ZTA must therefore rely on the testimony of Google witnesses to describe the specifics of the Proprietary Android Applications. ZTA should be afforded the benefits of having such witness provide live testimony at trial. Accordingly, the second private interest factor favors transfer.

   **c.**  **The Cost of Attendance For Willing Witnesses Favors Transfer**

  "The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343; *see also Nintendo*, 589 F.3d at 1198-99 (weighing the travel burden and disruption to work and family for trial witnesses). As noted by the Fifth Circuit, "it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home and that additional distance means additional travel time" and additional monetary burden. *See*

*Volkswagen of Am.*, 545 F.3d at 317. (citation, quotation marks, and brackets omitted). "Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *See id.* Additionally, "[b]ecause it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *Intelligent Automation Design*, 2016 WL 4424967 at 9; *Groupchatter*, 2016 WL 2758480 at *4 (quoting *In re TS Tech USA Corp.*, 551 F.3d at 1320 (citations omitted)).

In this case, to the extent ZTX employees have knowledge regarding the issues relevant to AGIS's allegations, such as the relationship between ZTX and ZTC, most of these employees work or reside in the vicinity of Milpitas, California,  Shan Decl. ¶ 17, approximately 1,800 miles from this District. Ex. B. ZTX's operations in Texas principally concern technical marketing support and research and development activities related to microelectronics. Shan Decl. ¶ 15. None of ZTX's employees in Texas are expected to have unique knowledge relevant to this case. *Id*. As stated above, all ZTE-related personnel located in the United States and who are responsible for interacting with Google on Google applications and Google Android issues are located in the San Francisco Bay Area or in San Diego. Yee Decl. ¶ 9. Third parties, who are expected to have relevant information based on AGIS's own Amended Complaint, are also located in California. Thus, the NDCA would be far less costly and much more convenient for witnesses from ZTX's principal place of business in Milpitas, California and other ZTE-related

personnel, as well as for witnesses from Google or Boost Mobile, located in Mountain View, California and Irvine, California, respectively.[9]

Here, where "most witnesses and evidence [are] closer to the transferee venue" and "few or no convenience factors [favor] the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198 (overturning denial of motion to transfer). Therefore, the third private factor weighs strongly in favor of transfer to the NDCA.

**d.      The Remaining Private Interest Factor Is Neutral.**

The remaining private interest consideration concerns practical problems related to the ease, expense, and expediency of trial. These practical problems include those "rationally based on judicial economy." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-cv-00919-JDL, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 17, 2014). Given the early stage of this proceeding, this private interest factor is neutral.

**2.      The Public Interest Factors Favor Transfer To California**

**a.      The Northern District Of California Has A Substantial Connection To and Local Interest In Adjudicating This Case**

The NDCA has a significant interest in this dispute because (1) ZTX has its principal place of business in that District and ZTA has an office in that District; (2) AGIS implicates at least one third party located in the NDCA; and (3) AGIS's allegations call into question the work and reputation of ZTE-related personnel and Google employees residing or conducting business in the NDCA. *See, e.g.*, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferee district's local interest is strong because case "calls into question the work and

---

[9] Both the Mountain View, California, and Irvine, California, are more than 1,100 miles closer to the NDCA than to the EDTX. Ex. B.

reputation of several individuals residing in or near that district and who presumably conduct business in that community").

In contrast, the EDTX has no meaningful connection to this dispute. AGIS's litigation-manufactured and barely-detectable presence here does not outweigh the NDCA's manifest local interest in adjudicating this case. *See Microsoft*, 630 F.3d at 1364 (rejecting that the court must honor "connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *see also Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-cv-00511-CE, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22, 2011) ("Establishing a principal place of business in this district shortly before filing suit does not create a local interest."). Thus, this factor favors transfer to the NDCA.

### b.     Administrative Difficulty From Court Congestion Is Neutral

Certain court congestion statistics favor transfer to the NDCA, while others place the Districts very close together. For example, the EDTX has an extraordinary number of patent cases pending on its docket. In since 2016, nearly 2,400 patent cases were filed in the EDTX. Ex. C at 1. In contrast, only around 330 patent cases were filed in the NDCA. Ex. C at 2. Additionally, since 2000, the average time to bench trial in patent cases in the NDCA (29 months) is only three months longer than in the EDTX (26 months). Ex. C at 4, 5. However, "this factor is the most speculative and cannot alone outweigh other factors." *Intelligent Automation Design*, 2016 WL 4424967 at 11 (*citing Genentech*, 566 F.3d at 1347); *see also Indus. Tech. Research Inst..*, 2011 WL 10622246 at *8 (granting motion to transfer to the District of New Jersey despite evidence of slightly faster time to trial in the EDTX). Thus, this public interest factor is neutral.

### c.  The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral because federal patent law will apply to this case and the EDTX and NDCA are all capable of adjudicating patent claims.

## VI.  CONCLUSION: THIS CASE SHOULD BE DISMISSED OR TRANSFERRED

Based on the forgoing, ZTX respectfully request that the Court dismiss AGIS's Amended Complaint against them for failure to state a claim and improper venue or, alternatively, transfer this case to the NDCA.[10]

Respectfully submitted,

Dated: November 21, 2017

/s/Lionel M. Lavenue
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:      (202) 408-4400

ATTORNEY FOR DEFENDANTS
ZTE (USA) INC. AND ZTE (TX), INC.

---

[10] Alternatively, should the Court find that venue is proper in this District on the basis of ZTX's remote employee's homes here, and that other judicial districts are not clearly more convenient, ZTX and ZTA respectfully request transfer to the Sherman Division of this Court, which would be more convenient for ZTX's employees in Plano and Allen, Texas. *See American GNC Corp. v. ZTE Corp.*, 2:17-CV-00107, Dkt. No. 66 at *1-2 (E. D. Tex./ Sep. 5, 2017).

## **CERTIFICATE OF CONFERENCE**

The parties complied with Local Rule CV-7(h). On September 22, 2017, Defendants'
counsel conferred with Plaintiff's counsel via telephone, and on November 19, 2017, Plaintiff's
counsel confirmed that Plaintiff opposes the transfer relief sought in this motion.

*/s/Lionel M. Lavenue*

Lionel M. Lavenue

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF")

all counsel of record who have appeared in this case.


*/s/Lionel M. Lavenue*

Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
Phone:  (571) 203-2700
Fax:     (202) 408-4400

ATTORNEY FOR DEFENDANTS
ZTE (USA) INC. AND ZTE (TX), INC.