**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT, LLC, | § § § | |
| | § | Case No. 2:17-cv-00517-JRG |
| Plaintiff, | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| | § | |
| ZTE CORPORATION, ET AL., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT FOR IMPROPER VENUE**
**OR, IN THE ALTERNATIVE, TO TRANSFER (DKT. NO. 38)**

**<u>TABLE OF CONTENTS</u>**

**Page(s)**

INTRODUCTION ..................................................................................................................1

I.  BACKGROUND ........................................................................................................3

    A.  Plaintiff AGIS Software Development, LLC ......................................................3

    B.  AGIS's Witnesses ..............................................................................................4

    C.  Defendants' Connections to the Eastern District of Texas..................................5

    D.  Non-Party Witnesses..........................................................................................7

    E.  This Court's Experience With The Patents-in-Suit ............................................8

    F.  ZTA's Prior Admission......................................................................................8

II.  LEGAL STANDARDS ..............................................................................................9

    A.  Venue .................................................................................................................9

    B.  Transfer Under Section 1404(a) .......................................................................11

III.  ARGUMENT ...........................................................................................................12

    A.  Venue is Proper as to Defendant ZTX ..............................................................12

        1.  ZTX "Resides" in the State of Texas .......................................................12

    B.  Venue is Proper as to Defendant ZTA ..............................................................15

        1.  ZTA Has Engaged in Acts of Infringement in This District....................15

        2.  ZTA Has a Regular and Established Place of Business in This
            District ..................................................................................................15

    C.  Transfer to the Northern District of California Pursuant to Sections
        1404(a) and 1406(b) Is Not Warranted ............................................................20

        1.  The Private Interest Factors Weigh Against Transfer ..............................20

            (a)  Convenience of the Parties and Witnesses and Cost of
                Attendance for Willing Witnesses Weigh Against Transfer ..........20

            (b)  Access to Sources of Proof Does Not Favor Transfer ....................23

            (c)  Compulsory Process Does Not Favor Transfer ..............................25

2. The Public Interest Factors Weigh Against Transfer .................................26

(a) This District Has a Substantial Interest in This Dispute ................26

(b) Court Congestion Weighs Against Transfer ...................................27

IV. CONCLUSION ....................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abatix Corp. v. Capra, et al.*,
No. 2:07-CV-541, 2008 WL 4427285, at *7 (E.D. Tex. Sept. 24, 2008) ..............................23

*Aerielle, Inc. v. Monster Cable Prod., Inc.*,
No. 206CV382TJW, 2007 WL 951639 (E.D. Tex. Mar. 26, 2007) .....................................22

*AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*,
775 F. Supp. 2d 640 (S.D.N.Y. 2011) ................................................................................21

*Aloft Media, LLC v. Adobe Sys.*,
No. 6:07–CV–355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ................................*passim*

*Am. GNC Corp. v. ZTE Corp.*,
No. 4:17-cv-00620-ALM-KPJ, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017) ........ 6, 8, 16, 18

*Am. GNC Corp. v. ZTE Corp.*,
No. 4:17-cv-00620-ALM-KPJ, 2017 WL 5163605 (E.D. Tex. Oct. 4, 2017).................*passim*

*Blue Spike, LLC v. Nook Digital,* LLC,
No. 6:16-cv-1361-RWS-JDL, 2017 WL 3263871 (E.D. Tex. Jul. 28, 2017)........................13

*Blue Spike, LLC v. Texas Instruments, Inc.*,
No. 6:12-cv-499, 2014 WL 11829322 (E.D. Tex. Mar. 31, 2014) .........................................9

*Brevel Prod. Corp. v. H & B Am. Corp.*,
202 F. Supp. 824 (S.D.N.Y. 1962)......................................................................................18

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*
406 U.S. 706 (1972) ............................................................................................................9

*In re Cordis Corp.*,
769 F.2d 733 (Fed. Cir. 1985)............................................................................................10

*Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*,
No. 6:12-CV-100-LED-JDL, 2013 WL 682849 *at 4 (E.D. Tex. 2013) ...............................22

*Denver & R. G. W. R. Co. v. Brotherhood of R. R. Trainmen*,
387 U.S. 556 (1967) ..........................................................................................................14

*Diem LLC v. BigCommerce, Inc.*,
No. 6:17-CV-186, 2017 WL 3187473 (E.D. Tex. Jul. 26, 2017) ............................. 10, 12, 13

*Eidos Display, LLC v. AU Optronics Corp.*,
No. 6:11-CV-201, 2011 WL 13098296, at *2 (E.D. Tex. Dec. 21, 2011) ............................21

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
No. 2:15-CV-37, 2017 WL 2651618 (E.D. Tex. June 20, 2017) ..........................................13

*etradeshow.com, Inc. v. Netopia Inc.*,
No. 3:03-CV-1380-K, 2004 WL 515552 (N.D. Tex. Jan. 30, 2004) .......................................9

*Fourco Glass Co. v. Transmirra Products Corp.*,
353 U.S. 222 (1957) ................................................................................................... 10, 14

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
867 F. Supp. 2d 859 (E.D. Tex. 2012) ................................................................ 20, 22, 26

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ..............................................................................................8

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) ...........................................................................................................11

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) ............................................................................................12

*Hupp v. Siroflex of Am., Inc.*,
848 F. Supp. 744 (S.D. Tex. 1994) ...................................................................................20

*Invitrogen Corp. v. Gen. Elec. Co., et al.*,
No. 6:08-CV-112, 2009 WL 331891, at *2 (E.D. Tex. Feb. 9, 2009) ..................................23

*L. D. Schreiber Cheese Co. v. Clearfield Cheese Co.*,
495 F. Supp. 313 (W.D. Pa. 1980) ....................................................................................17

*Langton v. CBeyond Communication, LLC*,
282 F. Supp. 2d 504 (E.D. Tex. 2003) ................................................................................9

*Mangosoft Intellectual Property, Inc. v. Skype Techs. SA*,
2007 WL 2008899 (E.D. Tex. July 5, 2007) ......................................................................21

*McGah v. V-M Corp.*,
166 F. Supp. 662 (N.D. Ill. 1958) .....................................................................................18

*Mears Techs., Inc. v. Finisar Corp.*,
No. 2:13-cv-376, 2014 WL 1652603 (E.D. Tex. April 24, 2014) ........................................11

*Mohamed v. Mazda Corp.*,
90 F. Supp. 2d 757 (E.D. Tex. 2000) ..........................................................................20, 23

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
   433 F. Supp. 2d 795 (E.D. Tex. 2006) ...............................................................25

*Odom v. Microsoft Corp.*,
   596 F. Supp. 2d 995 (E.D. Tex. 2009) ...............................................................24

*PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*,
   No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ........................25

*Portsmouth Baseball Corp v. Frick*,
   132 F. Supp. 922 (S.D.N.Y., June 22, 1955) ......................................................14

*In re Princeton Digital Image Corporation*,
   496 Fed. App'x 73 (Fed. Cir. 2012) *en banc denied* (2013) ..................................9

*Raytheon Co. v. Cray, Inc.*,
   No. 2:15-CV-01554, 2017 WL 2813896 (E.D. Tex. June 29, 2017),
   *mandamus granted, order vacated on other grounds sub nom. In re Cray, Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017).................................................................. 10, 11, 15, 16

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997).........................................................................12

*Rossco Holdings Inc. v. Best W. Int'l Inc.*,
   No. H-06-0155, 2006 WL 1007474 (S.D. Tex. Apr. 18, 2006)............................21

*Shoemake v. Union Pacific R.R. Co.*,
   233 F. Supp. 2d 828 (E.D. Tex. 2002) ...............................................................21

*Sperry Prod. v. Ass'n of Am. Railroads*,
   132 F.2d 408 (2d Cir. 1942) ......................................................................... 13, 14

*Stonite Products Co. v. Melvin Lloyd Co.*,
   315 U.S. 561 (1942) .........................................................................................13

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) ................................................................................*passim*

*Uniloc USA, Inc. v. Tangome, Inc.*,
   No. 6:16-CV-380, 2016 WL 9240543 (E.D. Tex. Nov. 14, 2016) ........................22

*VCode Holdings, Inc. v. Cognex Corp.*,
   No. 2:07-CV-138, 2007 WL 2238054 (E.D. Tex. Aug. 3, 2007)...........................23

*Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*,
   No. 2:10-CV-490, 2013 WL 2241947 (E.D. Tex. May 21, 2013)..........................26

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...................................................................... 11, 12

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*) ........................................................ 11

**Statutes**

28 U.S.C. § 1391(c)(3) ............................................................................................ 9

28 U.S.C. § 1400(b) .............................................................................. 9, 12, 13, 14

28 U.S.C. § 1404(a) ............................................................................................. 11

35 U.S.C. § 1400 .................................................................................................... 1

Federal Employer's Liability Act ........................................................................ 14

**Other Authorities**

15 Wright, Miller & Cooper, Fed. Practice and Proc. § 3849 (3d ed. 2009) ............................... 11

Rule 3-1(g) ........................................................................................................... 24

**RESPONSE TO STATEMENT OF ISSUES TO BE DECIDED BY THE COURT
PURSUANT TO LOCAL RULE CV-7(a)(1)**

1) The Court should not dismiss this case for improper venue because [a] Defendant ZTE (TX) Inc. "resides" in the state of Texas and [b] Defendant ZTE (USA) Inc. has committed acts of infringement and has a regular and established place of business in Plano, Texas.

2) The Court should not transfer this case to the Northern District of California because Defendants ZTE (TX) Inc. and ZTE (USA) Inc. have failed to show that the Northern District of California is a "clearly more convenient" venue for all parties, non-party witnesses, expert witnesses, or that transfer to the Northern District of California serves the interests of justice.

Plaintiff AGIS Software Development, LLC ("AGIS"), by and through its undersigned counsel, hereby submits this response in opposition to Defendants ZTE (TX) Inc. ("ZTX") and ZTE (USA) Inc.'s ("ZTA" together with ZTX, "Defendants") motion to dismiss for improper venue, or in the alternative, to transfer (Dkt. No. 38) (the "Motion"). Defendants' motion should be denied in its entirety.

## INTRODUCTION

The Eastern District of Texas is proper venue for this action under 35 U.S.C. § 1400 because each of the Defendants, ZTX and ZTA, has significant and undeniable connections to this District. Defendant ZTX is incorporated in Texas and employs at least 14 full-time employees who live and work within the Eastern District of Texas. Based on this District's precedent, these facts are sufficient to establish that venue is proper as to ZTX, and ZTX identifies no controlling case law to the contrary. Defendant ZTA is registered to do business in Texas and maintains a regular and established place of business in this District. ZTA admitted in a prior case in this District that it established a local customer service center with iQor in Plano, Texas. While Defendants try to distance themselves from this regular and established place of business by asserting that iQor is an outside vendor, Defendants cannot deny that this facility has more than 60 customer service representatives dedicated to ZTA whose objective is to build brand loyalty and provide service exclusively to ZTA's customers. Nor can Defendants deny that ZTA employees regularly work with iQor representatives at that service center in Plano, Texas. In fact, based in part on the activities of this very same service center, in *American GNC* a Court in this District recently held that venue in this District is proper for ZTA under *TC Heartland.* This Court should reach the same result here.

Not only is venue proper in this District, but it is more convenient as well. Neither ZTX nor ZTA have identified a single potential, relevant witness located in their facilities in

California, nor have they identified any other specific piece of relevant evidence located there. Moreover, by ZTE's own admission, the witnesses and documents related to the design and manufacture of the Accused Products are located in China, not in the Northern District of California. The Northern District of California is not more convenient—let alone "clearly more convenient"—than the Eastern District of Texas for these Chinese witnesses. In contrast, AGIS has offices in Marshall and its sister company, Advanced Ground Information Systems, Inc. ("AGIS Inc."), maintains an office in Austin, Texas, where an AGIS witness lives and works. AGIS regularly works with a consultant in Allen, Texas who is likely to be a key witness regarding software development for products related to the Patents-in-Suit. All of AGIS's other key fact witnesses are located in either Jupiter, Florida or Lenexa, Kansas, which are both substantially closer to the courthouse in Marshall, Texas than to the Northern District of California. This includes AGIS's founder, CEO and named inventor, Malcolm "Cap" Beyer. In addition, Mr. Beyer has longstanding business and personal ties to this District and to the State of Texas, as do several other AGIS Inc. employees. AGIS's witnesses and many of the expected non-party witnesses would be greatly inconvenienced if this case were transferred to the Northern District of California.

ZTX and ZTA, not Google, are the parties to this case and their substantial connections to this District weigh heavily against transfer. While AGIS has accused functionality related to Google's Android Operating System, much of that relevant information is publicly available through either open source code or public application programming interfaces ("API"). In this case, AGIS accuses ZTE's smartphones and tablets of infringing the Patents-in-Suit—not Google's devices. Even if Google were to possess relevant documents and employ individuals who have knowledge about the Accused Products and functionality, Defendants have not

demonstrated how any specific Google witness or document would necessitate transfer to the Northern District of California.

Finally, because this case has been pending for almost 6 months and closely-related suits are also being litigated in this District and are well into discovery, judicial economy weighs against transfer.  For all of these reasons and those stated in more detail below, Defendants' motion should be denied.

I.      BACKGROUND

    A.      Plaintiff AGIS Software Development, LLC

AGIS's predecessor (now sister company), AGIS Inc. was founded by former U.S. Marine Cap Beyer in 2004.  Declaration of Malcolm K. Beyer ("Beyer Decl.") attached hereto as Exhibit A, at ¶ 4.  AGIS Inc.'s primary business has been the development and sale of the "LifeRing" solution, which includes software and servers that enable mobile devices to securely establish ad hoc digital networks.  *Id.* at ¶ 12.  LifeRing has been sold to military, defense, first-responder, and private industry customers since 2004.  *Id.*  AGIS Inc. also developed a smartphone-based emergency broadcast and response command control system for first responders called "ASSIST."  *Id.*

In 2017, Mr. Beyer and the other AGIS Inc. shareholders formed AGIS Holdings, Incorporated ("AGIS Holdings"), a Florida corporation.  *Id.* at ¶ 7.  AGIS Holdings consists of two subsidiaries, AGIS Inc. and Plaintiff (AGIS) which is a Texas limited liability company.  *Id.* AGIS Inc. has offices in Lenexa, Kansas, Jupiter, Florida, and Austin, Texas.  *Id.* at ¶ 10.  AGIS holds the rights, by assignment, to each of the Patents-in-Suit and licenses its patent portfolio to AGIS Inc.  *Id.* at ¶ 8.  AGIS's principal place of business is located at 100 W. Houston Street, Marshall, Texas.  *Id.* at ¶ 9.  All of AGIS and AGIS Inc.'s employees with the exception of one

are located significantly closer to this District than the Northern District of California.  *See id.* at
¶¶ 4-6, 10-11, 14-20.

**B.  AGIS's Witnesses**

The witnesses AGIS expects to call are located in or much closer to this District than to
Northern California.  Mr. Beyer, who is AGIS's CEO, will be one of AGIS's primary witnesses.
Beyer Decl., at ¶ 5.  Mr. Beyer lives in Jupiter, Florida, (*Id.*) approximately 940 miles from the
courthouse in Marshall, and 2,560 miles from the courthouse in California.  Declaration of
Vincent Rubino ("Rubino Decl.") attached hereto as Exhibit B, at ¶ 2.  Mr. Beyer possesses
highly relevant knowledge regarding the conception and reduction to practice of the Patents-in-
Suit and has longstanding ties to this District.  *Id.*  Mr. Beyer's family has owned over 2,500
acres of land in Bowie County since 1867, and he has personally owned 412 acres of land in
Bowie County since 2001.  *Id.* at ¶ 22.

David Sietsema is expected to be another key fact witness in this case.  Mr. Sietsema has
worked for AGIS Inc. and its related companies for more than 10 years.  *Id.* at ¶ 17.  His
responsibilities include overseeing contracts and licenses for AGIS and its related entities, as
well as ensuring compliance with rules and contractual clauses linked to intellectual property
rights.  *Id.* at ¶ 17.  Mr. Sietsema lives and works in Austin, Texas, (*Id.*) 1,200 miles closer to the
courthouse in Marshall than the courthouse in the Northern District of California.  Rubino Decl.,
at ¶ 2.

Sandel Blackwell is expected to be another key witness for AGIS.  Mr. Blackwell is the
President of AGIS Inc. and a Director of both AGIS and AGIS Inc.  Beyer Decl., at ¶ 18.
Mr. Blackwell manages the development of the software in AGIS Inc.'s LifeRing and ASSIST
solutions.  *Id.*  Mr. Blackwell works at AGIS Inc.'s Lenexa, Kansas office and frequently travels
to the Jupiter, Florida office.  *Id.*  Mr. Blackwell maintains regular communication with AGIS

4

Inc.'s programmers and software developers in Florida, Kansas, and Texas, and regularly works with an AGIS consultant in this District. *Id.* Mr. Blackwell's office in Lenexa, Kansas is 444 miles from Marshall and 1,498 miles to the Northern District of California. Rubino Decl., at ¶ 2. Mr. Blackwell owns land in Jasper County, Texas, has close personal ties to Texas, and travels here frequently. Beyer Decl. at ¶ 18.

An important non-party witness for AGIS will be Eric Armstrong, a former AGIS Inc. employee, who is now a full-time consultant for AGIS and AGIS Inc. Mr. Armstrong is responsible for designing and developing client-side and server-side software for the LifeRing and ASSIST solutions. *Id.* at ¶ 16. Mr. Armstrong lives and works in Allen, Texas in this District. *Id.* at ¶ 15. Mr. Armstrong works closely with Mr. Blackwell and AGIS Inc. employees, such as Rebecca Clark, regarding software development and quality assurance. *Id.* at ¶ 16. Mr. Armstrong is expected to have documents relevant to this action in his office in this District, including e-mails regarding the development of software and marketing which are stored on his computer. Transfer of this action to the Northern District of California would require Mr. Armstrong to travel approximately 1,300 additional miles to testify at trial and will put him beyond the subpoena power of the court. *See* Rubino Decl., at ¶ 2. Another important non-party witness for AGIS will be its technical expert, Joseph C. McAlexander, whose office is located at 101 Renner Trail # 350, Richardson, Texas. *Id.* at ¶ 5. None of AGIS's expected witnesses are located in the Northern District of California.

### C. Defendants' Connections to the Eastern District of Texas

ZTX is a Texas corporation registered to do business in Texas and is a taxable entity with the Texas Comptroller of Public Accounts. ZTX's sole customer is Defendant ZTE Corporation. Declaration of Chao (George) Shan ("Shan Decl."), Dkt. 38-1, at ¶ 5. ZTX conducts research and development activities and provides technical marketing support for ZTE Corporation with

5

respect to the Accused Instrumentalities (*i.e.*, "handsets").  *Id.* at ¶ 5.  ZTX employs at least 14 employees who live and work within the Eastern District of Texas.  *Id.* at ¶ 14.  At least 11 ZTX employees live and work within Plano, Texas.  *Id.*  At least 3 ZTX employees live and work in Allen, Texas, the same town as a key non-party witness for AGIS.  *Id.*  ZTX concedes that its documents are stored electronically on a server.  *Id.* at ¶ 16.  ZTX further concedes that this District is convenient for at least its 14 employees in this District.  *Id.* at ¶ 17.  ZTX's operations in Texas principally concern technical marketing and research and development activities.  *Id.* at ¶ 15.  While ZTX suggests that its proof relating to the development and testing of relevant products is more likely to be in its San Diego and Milpitas, California locations (Shan Decl., at ¶ 16), Mr. Shan does not identify a single witness from ZTX or ZTA involved in research and development at any of these facilities in California.

ZTA is a New Jersey Corporation registered to do business in Texas and is a taxable entity with the Texas Comptroller of Public Accounts.  ZTA maintains a regular and established place of business in Plano, Texas.  *Am. GNC Corp. v. ZTE Corp.*, No. 4:17-cv-00620-ALM-KPJ, 2017 WL 5163605, at *3-4 (E.D. Tex. Oct. 4, 2017), *report and recommendation adopted*, No. 4:17-cv-00620-ALM-KPJ, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017).  ZTA established a local customer service center with iQor in Plano, Texas.  Rubino Decl., at ¶ 11-12; *Am. GNC Corp.* 2017 WL 5163605, at *4.  The ZTA local customer service center has more than sixty dedicated ZTA customer service representatives whose objective is to "build brand loyalty with exceptional customer service."  Rubino Decl., at ¶ 11-12; *Am. GNC Corp.* 2017 WL 5163605, at *4.  Additional ZTA employees visit the local customer service center regularly to work with iQor representatives.  Rubino Decl., at ¶ 11-12; *Am. GNC Corp.* 2017 WL 5163605, at *4.  ZTA has at least two full-time employees (supervisors) on site at the local customer service center.

*Am. GNC Corp.* 2017 WL 5163605, at \*4.  ZTA's customer-facing website seamlessly integrates with customer support provided by the local customer service center, including links to call and live chat with representatives at the local customer call service center.  *Id.*  Visitors to the website's live chat and callers to the local call center seek assistance with the Accused Instrumentalities.  *See id.*  ZTA products are sold in the Eastern District of Texas.  *See id.*

ZTA admits that it "has employee(s) who live in the Eastern District of Texas, and one or more of those employee(s) may work from "ZTA's employee home offices."  Mot. at 5.  At the very least, the status of these employees and the nature of their activities for ZTA should be the subject of additional discovery.

### D.    Non-Party Witnesses

To the extent Google witnesses may have relevant information -- which AGIS believes they do not have -- Defendants' suggestion that relevant Google witnesses are located in California is mere speculation.  For example, Google has long employed over 450 workers in Austin, some of whom should have knowledge about the Google products Defendants consider relevant.  Rubino Decl., at ¶ 3-4.[1]  Defendants do not identify any Google employees in the Northern District of California who may have information relevant to this case, let alone necessary for transfer.  This District is also more convenient for anticipated non-party witnesses from AT&T, Sprint, and Verizon whom AGIS believes will provide information about the value of the accused software.  Rubino Decl., at ¶ 6-8.

---

[1] According to a 2017 press release, Google's Austin employees work on products teams including, "Android, G Suite, Google Play, people operations, finance, engineering, and marketing."  *Id.* at 3-4.

### E.     This Court's Experience With The Patents-in-Suit

AGIS asserts five patents in this case, U.S. Patent Nos. 9,467,838 (the "'838 Patent"); 9,445,251 (the "'251 Patent"); 9,408,055 (the "'055 Patent"); 9,749,829 (the "'829 Patent"); and 8,213,970 (the "'970 Patent") (collectively, the "Patents-in-Suit").  This Court is currently presiding over five patent infringement cases,[2] including the instant case, each of which involves at least the same four, if not all, of the Patents-in-Suit.  Additionally, the five patent infringement cases are closely related because they involve the same plaintiff, the same underlying technology, substantially similar accused instrumentalities and functionalities, and identical claims per patent.  At this time, discovery has been well underway in the Apple case.  The Court has consolidated the Huawei and LG cases and discovery in the consolidated case is also underway.

### F.     ZTA's Prior Admission

Defendants have previously conceded that venue is proper as to ZTX in the Eastern District of Texas.  *Am. GNC Corp. v. ZTE Corp.*, No. 4:17-cv-00620-ALM-KPJ, 2017 WL 5163605, at *3 (E.D. Tex. Oct. 4, 2017), *report and recommendation adopted*, No. 4:17-cv-00620-ALM-KPJ, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017); Ex. 1. (*American GNC Corporation v. ZTE Corporation et al.*, No. 4:17-cv-00620-ALM-KPJ, Doc. No. 29, ¶¶ 1–2 (E.D. Tex. Apr. 21, 2017)).  The Court may take judicial notice of this pleading because pleadings are public records.  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

---

[2] *AGIS Software Development LLC v. Apple, Inc.*, 2:17-cv-00516-JRG (E.D.Tex.); *AGIS Software Development LLC v. HTC Corporation*, 2:17-cv-00514-JRG (E.D.Tex.); *AGIS Software Development LLC v. LG Electronics, Inc.*, 2:17-cv-00515-JRG (E.D.Tex.); *AGIS Software Development, LLC v. ZTE Corporation et al.*, 2:17-cv-00517-JRG (E.D.Tex.); *AGIS Software Development LLC v. Huawei Device USA Inc. et al*, 2:17-cv-00513-JRG (E.D.Tex.).

## II.    LEGAL STANDARDS

### A.    Venue

On a motion to dismiss for improper venue, a plaintiff need only present facts which, when taken as true, establish venue.  *Langton v. CBeyond Communication, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003).  Courts will accept as true uncontroverted facts in a plaintiff's pleadings and "will resolve any conflicts in the plaintiff's favor." *Id.*; *see also etradeshow.com, Inc. v. Netopia Inc.*, No. 3:03-CV-1380-K, 2004 WL 515552, at *2 (N.D. Tex. Jan. 30, 2004).

The U.S. Supreme Court unanimously held that patent infringement litigation against a foreign defendant can be brought in any district and is not limited to the requirements set forth in the patent venue statute, 28 U.S.C. § 1400(b).  *See Brunette Machine Works, Ltd. v. Kockum Industries, Inc.* 406 U.S. 706, 713-14 (1972); *accord In re Princeton Digital Image Corporation*, 496 Fed. App'x 73 (Fed. Cir. 2012) *en banc denied* (2013).  Rather, all foreign defendants are subject to 28 U.S.C. § 1391(c)(3) which provides: "For *all venue purposes* . . . a defendant not resident in the United States may be sued in *any* judicial district . . . ." (Emphasis added).  Section 1391's grant of venue for lawsuits against foreign defendants is a "principle of broad and overriding application."  *Brunette*, 406 U.S. at 714.  A foreign defendant "cannot rely on § 1400(b) as a shield against suit" in a particular district.  *Id.*; *see also Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, 2014 WL 11829322, at *4 (E.D. Tex. Mar. 31, 2014) ("venue against a foreign defendant is determined in accordance with the general venue statute, 28 U.S.C. § 1391(c)(3)").  In other words, a foreign defendant does not have an improper venue defense.

Venue for domestic defendants in patent infringement cases is governed by 28 U.S.C. § 1400(b).  *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought [1] in

the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." *TC Heartland,* 137 S. Ct. at 1514.  Regarding the first test, the Supreme Court has long-interpreted that a corporation "resides" or is a "resident" only in its state of incorporation for the purposes of the venue statute. *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 226 (1957) ("we pause here to observe that this treatment, and the expressed reason for it, seems to negative any intention to make corporations suable, in patent infringement cases, where they are merely 'doing business,' because ['resides'] mean[s] domicile, and, in respect of corporations, mean[s] the state of incorporation only."); *TC  Heartland*, 137 S. Ct. at 1517 ("We therefore hold that a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."). This Court has held that "[a] Texas corporation is chartered by the State to pursue lawful commercial pursuits anywhere in Texas.  It therefore resides in all the judicial districts of that state where it may pursue its commercial objectives."  *Diem LLC v. BigCommerce, Inc.*, No. 6:17-CV-186, 2017 WL 3187473, at *3 (E.D. Tex. Jul. 26, 2017).

With respect to the second test, courts have "consistently held that an *allegation* of infringement is itself sufficient to establish venue and [the] plaintiff is not required to demonstrate actual infringement by [the] defendant[]." *Raytheon Co. v. Cray, Inc.*, No. 2:15-CV-01554-JRG, 2017 WL 2813896, at *4 (E.D. Tex. June 29, 2017), *mandamus granted, order vacated on other grounds sub nom.  In re Cray, Inc.*, 871 F.3d 1360, 1363 (Fed. Cir. 2017) ("*Cray*"); *see also In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) ("[T]he issue of infringement is not reached on the merits in considering venue requirements.").  To establish a "regular and established place of business," "(1) there must be a physical place in the district;

(2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Cray*, 871 F.3d at 1363.

### B.      Transfer Under Section 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  When seeking to transfer venue for convenience, "the movant bears the burden to clearly demonstrate that a transfer is 'clearly more convenient' than the venue chosen by the plaintiff." *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376-JRG, 2014 WL 1652603, at *2 (E.D. Tex. April 24, 2014).  The defendant must do *more* than show that transferee district is a clearly more convenient venue for *it* to defend against the plaintiff's claims; it must show that the transferee district would be "more convenient for *both* parties involved, non-party witnesses, expert witnesses, and in the interest of justice." *Aloft Media, LLC v. Adobe Sys.*, No. 6:07–CV–355, 2008 WL 819956, at *3 (E.D. Tex. Mar. 25, 2008) (emphasis added); 15 Wright, Miller & Cooper, Fed. Practice and Proc. § 3849 (3d ed. 2009) ("[S]ection 1404(a) refers to all of the parties to the action, which means that their frequently competing conveniences must be taken into account by the court.  Therefore, transfer will be refused on account of this factor if the effect of a change of venue would be merely to shift the inconvenience from one party to the other.").  If the defendant fails to make this showing, "the plaintiff's choice [of venue] must be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) (Volkswagen II); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

In conducting its analysis, the court first determines whether the suit could have been brought in the proposed transferee district.  *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (Volkswagen I).  If the court answers that question affirmatively, it then evaluates certain private and public interest factors.  *Id.*  The private-interest factors include: (1) "the

relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make a trial case easy, expeditious, and inexpensive." *Id.* The public-interest factors include (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflicts of laws." *Id.* Plaintiff's choice of venue is also a relevant consideration. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered" in a transfer of venue analysis). Although not an enumerated factor, "[c]onsideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted).

## III. ARGUMENT

### A. Venue is Proper as to Defendant ZTX

#### 1. ZTX "Resides" in the State of Texas

This District is a proper venue with respect to ZTX. Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought [1] in the judicial district where the defendant resides…" *TC Heartland,* 137 S. Ct. at 1514. The controlling law in this District is that a Texas corporation "resides in all the judicial districts" of the state. *Diem LLC*, 2017 WL 3187473 at *3. ZTX concedes that it is a Texas corporation and ZTA has previously conceded that this District is a proper venue for an action against ZTX. *Am. GNC Corp.*, 2017 WL 5163605, at *3. ZTX now urges this Court to adopt an interpretation of Section 1400(b) that is contrary to the controlling law, and reduces its consideration of *Diem* to a footnote. Mot. at 10

n.3.  ZTX primarily relies on *Stonite* to support its untenable position that, under Section 1400(b), a corporation's "residence" must be established in a *single district*, as opposed to *any district* within the state (Mot. at 8-9), even though this Court has already rejected this line of reasoning as unpersuasive and misplaced.  *Stonite* merely addressed the question of whether the laws of venue for patent infringement litigation were supplemented by the then-jurisdictional statutes; *Stonite* did not establish that a corporation's "residence" must be established in a single judicial district, nor analyzed on a district-by-district basis.  *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 562 (1942).

The other cases cited by ZTX are also readily distinguishable.  Mot. at 10 n.3.  In *Elbit* and *Blue Spike*, the defendants challenging venue were not incorporated in Texas, unlike ZTX which is incorporated in Texas.  Even so, both cases recite unambiguous support for the fact that *Diem* states the controlling law.  *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-37-RWS-RSP, 2017 WL 2651618, at *18 (E.D. Tex. June 20, 2017) ("TC Heartland clarified. . . that the term 'resides' [in Section 1400(b)] refers 'only to the State of incorporation.'"); *Blue Spike, LLC v. Nook Digital,* LLC, No. 6:16-cv-1361-RWS-JDL, 2017 WL 3263871 (E.D. Tex. Jul. 28, 2017) ("[A] domestic corporation 'resides' only in its State of incorporation for purposes of the venue statute.").  The other cases cited by Defendants do not require a different result.  In *Sperry Prod. v. Ass'n of Am. Railroads*, 132 F.2d 408, 411 (2d Cir. 1942), Judge Learned Hand expressly acknowledged that a corporation is an "inhabitant" only of the state of its incorporation.  Addressing *unincorporated associations*, Judge Hand concluded that an "inhabitant" must mean that the unincorporated association must have more than a mere regular and established place of business in the state and thus further proposed an elevated standard: "we think that if a patentee chooses to sue an unincorporated association. . . he must do

13

so either at its principal place of business, or at any of the regular and established places of its business where it may have infringed."  The degree of business activities required to be considered an "inhabitant" is not at issue in this case.  ZTX is incorporated in Texas which alone satisfies the residency requirement under the current Section 1400(b).  The *Portsmouth* and *BNSF* cases, also cited by Defendants, add nothing relevant to this analysis.  *Portsmouth* and *BNSF* do not involve Section 1400(b) or any predecessor patent-specific venue statute, but instead concern breach of contract and Federal Employer's Liability Act issues subject to the general venue statute.  Further, the court in *Portsmouth* agreed that the *Sperry* case stood for the proposition that an unincorporated association was an inhabitant only at the place of its principal place of business.  *Portsmouth Baseball Corp v. Frick*, 132 F. Supp. 922, 925 (S.D.N.Y., June 22, 1955).  *Portsmouth* and *BNSF* did not disturb the law that "resides" or "inhabits" means state of incorporation.  Similarly, ZTX's citation to *Denver* is remarkable in that the Supreme Court stated unambiguously, and in the context of *Sperry*, that "[u]nder the decisions of this court, Corporations had a single residence for venue purposes, the State of their incorporation." *Denver & R. G. W. R. Co. v. Brotherhood of R. R. Trainmen*, 387 U.S. 556, 560 (1967).

Notably absent from the discussion of cases cited by ZTX are *TC Heartland* (the most recent Supreme Court case on venue) and *Fourco* (the foundational case in the *TC Heartland* opinion), both of which weigh in favor of finding venue proper as to ZTX.  *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227 (1957) ("we pause here to observe that this treatment, and the expressed reason for it, seems to negative any intention to make corporations suable, in patent infringement cases, where they are merely 'doing business,' because ['resides'] mean[s] domicile, and, in respect of corporations, mean[s] the state of incorporation only."); *TC Heartland*, 137 S. Ct. at 1517 ("We therefore hold that a domestic corporation 'resides' only in its

State of incorporation for purposes of the patent venue statute.").  Accordingly, venue is proper as to ZTX in the Eastern District of Texas, and this motion should be denied.

**B.     Venue is Proper as to Defendant ZTA**

**1.     ZTA Has Engaged in Acts of Infringement in This District**

ZTA does not dispute that it has engaged in infringing activities in this District as alleged in the Amended Complaint and, thus, concedes that ZTA engaged, and continues to engage, in the infringing activities alleged in the Amended Complaint.  Dkt. 32 at 23-83.

**2.     ZTA Has a Regular and Established Place of Business in This District**

This Court recently found that venue is proper against ZTA in this District under *TC Heartland* because ZTA maintains a regular and established place of business—specifically, a local customer service call center—in Plano, Texas.  *Am. GNC Corp.*, 2017 WL 5163605, at *3-4.  ZTA does not directly refute the facts upon which the Court based that decision but rather, now tries to distance itself from that call center.  It is clear however that ZTA's call center in Plano, Texas is in fact a place of business that is both regular and established.  *See Cray*, 871 F.3d at 1363 (holding that business in the forum district must be "regular," meaning not temporary or for some special work, and "established" by the defendant, which can be shown if defendant owns, leases, or "exercises other attributes of possession or control over the place").  The call center was established by ZTA, which exercises control over it, and has more than sixty dedicated customer service representatives whose objective is to "build brand loyalty with exceptional customer service" exclusively for ZTE.  Rubino Decl., at ¶ 11-12; *Am. GNC Corp.* 2017 WL 5163605, at *4  ZTA employees visit the local customer service call center regularly to work with customer service representatives.  *Id.*  ZTA also has at least two full-time employees (supervisors) on site at the local call center.  *Am. GNC Corp.* 2017 WL 5163605, at *4  Customer service representatives at ZTA's Plano, Texas call center routinely engage in business activities

15

such as technical support, dealer support, customer support, chat and email communication, social media posts, and cross-border support.  Rubino Decl., at ¶ 13.  For example, the representatives are responsible for researching, drafting, publishing, and approving articles for the ZTE USA knowledge base, including for the purposes of marketing and selling ZTE Accused Products and public policies and procedures with respect to the ZTE Accused Products.  *Id*. They are also responsible for preparing training materials for ZTE Accused Products.  *Id*.  The local call center representatives are further responsible for ZTA cloud sales, which includes taking payments for the Accused Products over the phone using a point-of-sale system for the Accused Products.  *Id*.  The representatives maintain and use a Live Chat customer service system to provide troubleshooting assistance, warranty service, and product information for the ZTE Accused Products.  *Id*.  They are assigned only to ZTA, work under the direction of ZTA, and escalate issues to ZTA supervisors for resolution.  *Id*.  There is ZTE signage in the local call center and representatives wear ZTE apparel.  *Id.* at ¶ 11.  In *American GNC*, counsel for ZTA unambiguously admitted that ZTA "established" the local call center that ZTE representatives are present at the local call center, and that ZTE representatives work at the local call center with the representatives.  Rubino Decl., at ¶ 12; 2017 WL 5163605, at *4; *see Cray*, 2017 WL 4201535, at *6 (holding that "a defendant's representations that it has a place of business in this district" is a relevant inquiry).

ZTA's contentions that it "does not exercise control over the iQor call center" and that it does not "own, lease, or rent the office space" are at odds with the undisputed facts in the *American GNC* case.  *Am. GNC Corp. v. ZTE Corp.*, No. 4:17-CV-00620-ALM-KPJ, 2017 WL 5163605, at *4 (E.D. Tex. Oct. 4, 2017), *report and recommendation adopted*, No. 4:17-CV-620, 2017 WL 5157700 (E.D. Tex. Nov. 7, 2017).  ZTA admitted that it "established" the call center

in this District.  Rubino Decl., at ¶ 12 (September 1, 2017 hearing transcript) at 17:13-14.  ("I don't dispute that that PowerPoint says that ZTE established the call center.").  ZTE now attempts to recant its prior admissions through a carefully worded attorney declaration. However, this declaration does not directly refute any of the factual findings by this Court in *American GNC*.  For example, ZTE does not and cannot directly refute the following factual findings upon which the Court based its decision:

1. ZTE USA established a local call center with iQor in Plano, Texas in early 2016.

2. The call center has more than sixty dedicated ZTE USA customer service representatives whose objective is to "build brand loyalty with exceptional customer experience."

3. ZTE USA employees visit the call center regularly to work with the iQor representatives.

4. ZTE USA has at least two full-time employees (supervisors) on site at the call center.

5. ZTE USA's customer-facing website seamlessly integrates with customer support provided by iQor such that customers are unaware whether they are being assisted by an iQor employee or a ZTE employee.

6. Callers to the call center are seeking assistance with, and the iQor representatives provide advice about, ZTE USA products.

7. Even though ZTE USA products are not sold from the call center, ZTE USA products—including products accused of infringement in this lawsuit—are sold in the Eastern District of Texas.

*Am. GNC Corp.*, 2017 WL 5163605, at *4.  Thus, the result here should be the same and ZTA's motion should be denied.

The cases cited by ZTA are inapposite.  ZTA's reliance on *Schreiber* is misplaced because in *Schreiber*, the plaintiff merely relied on the "presence" of employees in the district and not a physical place where those employees worked.  *L. D. Schreiber Cheese Co. v. Clearfield Cheese Co.*, 495 F. Supp. 313, 318 (W.D. Pa. 1980).  Here, ZTA has established a call service center in this District staffed by representatives whose object is to build loyalty to the

ZTE brand.[3]  *See American GNC*, 2017 WL 5163605 at \*4.  *Brevel* is similarly distinguishable

because the plaintiff again did not rely on a physical place of business.  *Brevel Prod. Corp. v. H*

*& B Am. Corp.*, 202 F. Supp. 824, 829 (S.D.N.Y. 1962).  In *Brevel*, the defendant did not have

any employees in the district and the defendant did not establish a physical location.  *Id*.  Finally,

*McGah* merely stands for the proposition that "the relationship of manufacturer and soliciting

agent, without **more**" is insufficient to satisfy the regular and established place of business

standard.  *McGah v. V-M Corp.*, 166 F. Supp. 662, 666 (N.D. Ill. 1958).  Here, there is **more**;

e.g. the seven factual findings set forth above in *Am. GNC Corp*.

      ZTA admits that it "has employee(s) who live in the Eastern District of Texas, and one or

more of those employee(s) *may* work from "ZTA's employee home offices" in this District.

Mot. at 5 (emphasis supplied).  Upon information and belief, ZTA's Eastern District employees

possess ZTE USA-issued permanent workstations and equipment for carrying out their duties

within the scope of their employment from "ZTA's employee home offices"; ZTA reimburses

these employees for certain costs associated with working from "ZTA's employee home offices"

which include the cost of devices, equipment, furniture, travel, and/or utility costs; that these

employees are subject to ZTA's rules and/or procedures for using ZTA computers/equipment

and for working from "ZTA's employee home offices"; ZTA sets forth standards for conducting

work from the "ZTA's employee home offices" and ensures compliance with all relevant federal,

state, and local laws for such home offices; ZTA creates job descriptions and identifies tasks

eligible for "ZTA's employee home offices;" ZTA reserves the right to discontinue and/or make

---

[3] ZTA attempts to distance itself from iQor, asserting that "ZTA employees may visit the call center at times, but they work from a cubicle set aside for visitors and are not stationed there full time."  Mot. at 7.  Whether the ZTA employees present at the call center are there on a permanent basis or rotate in and out of the call center, and whether they purportedly sit in a visitor's cubicle or somewhere else within the call center, is irrelevant.  ZTA employees are clearly a regular presence at the call center.

changes to the arrangements, at its discretion, for "ZTA's employee home offices"; ZTA implements procedures and policies for ongoing reviews, pilot programs, test periods with defined end dates, benchmarks for success of its employees and their performance at the "ZTA's employee home offices"; ZTA implements procedures and policies for restricting an employee's schedule at or ability to work from the "ZTA's employee home offices," including exercising control over the employee to work at particular sites other than the "ZTA's employee home offices" for specific business reasons; ZTA affords the worker's compensation benefits for injuries or disabilities arising out of and in the course and/or scope of employment at the "ZTA's employee home offices"; ZTA maintains records for hours worked by its employees, proactively monitors timekeeping to ensure timekeeping accuracy, and sets forth policies for what constitutes hours worked for work performed at the "ZTA's employee home offices"; ZTA implements technology maintenance and data security policies, regardless of whether it provides certain computers/equipment or a "bring your own device" policy for work at "ZTA's employee home offices."  ZTA does not dispute any of these allegations.  ZTA's local call center and/or "ZTA employee home offices" constitute "regular and established" places of business of ZTA. Accordingly, venue is proper in this District, and Defendants' motion should be denied.

If this Court lacks the necessary information to find venue proper due to any reason including, but not limited to, ZTA's failure to identify more than the facts that it "has employee(s) who live in the Eastern District of Texas, and one or more of those employee(s) may work from ZTA's employee home offices," or ZTA's failure to refute the above-provided information and beliefs, AGIS should be given the opportunity to conduct limited discovery for the purpose of determining whether venue is proper in this District.  Such limited discovery

should include jurisdictional and venue discovery to further elucidate the relationship between ZTA and its local call service center and/or "ZTA employee home offices."

### C.     Transfer to the Northern District of California Pursuant to Sections 1404(a) and 1406(b) Is Not Warranted

Defendants' request to transfer venue should be denied because Defendants have failed to show that the Northern District of California is "clearly more convenient" for *all* parties, non-party witnesses, expert witnesses, and in the interest of justice." *See Aloft Media,* 2008 WL 819956, at *3.

### 1.     The Private Interest Factors Weigh Against Transfer

### (a)     Convenience of the Parties and Witnesses and Cost of Attendance for Willing Witnesses Weigh Against Transfer

The convenience factors do not favor transfer.  For the Court to properly analyze any alleged inconvenience the current forum has on a witness, the moving party cannot make "a general allegation that key witnesses are inconveniently located." *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000).  Rather, the movant must "specifically identify key witnesses and outline the substance of their testimony." *Id.* (quoting *Hupp v. Siroflex of Am., Inc.*, 848 F. Supp. 744, 749 (S.D. Tex. 1994)).  Defendants have failed to meet this burden as they have failed to identify a single key witness who would be inconvenienced if transfer was denied.  *See* Mot. at 22-27.

The cost of attendance for relevant willing witnesses also weighs strongly against transfer.  *See Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870 (E.D. Tex. 2012) ("In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses.") (emphasis added).  "[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in transfer of venue analysis." *Id.* at 870-71

(emphasis added) (citing *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002)). AGIS's key party witnesses will include Mr. Beyer (Jupiter, Florida), Mr. Sietsema (Austin, Texas), and Sandel Blackwell (Lenexa, Kansas). The Eastern District of Texas is a more convenient venue for each of them. Unlike Defendants, AGIS is a small business and the absence of AGIS' witnesses will create a severe hardship for AGIS's ability to do business, while ZTA and ZTX would likely experience no impact if their witnesses were required to travel to Texas to testify. *See Rossco Holdings Inc. v. Best W. Int'l Inc.*, No. H-06-0155, 2006 WL 1007474, at *3 (S.D. Tex. Apr. 18, 2006) (denying transfer due in part to potential hardship to plaintiff as a small business); *see also AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 648 (S.D.N.Y. 2011) ("The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties"). The location of AGIS's key non-party witnesses weighs heavily against transfer as well. A crucial non-party witness for AGIS will be consultant Eric Armstrong who lives and works in Allen, Texas. In addition, AGIS's technical expert, Joseph C. McAlexander, is located in Richardson, Texas. *Aloft Media, LLC v. Adobe Sys.*, 2008 WL 819956, at *5 (E.D. Tex. 2008) ("[A] patent trial often revolves around the strength of expert witness testimony, and many experts are also non-party witnesses.") (citing *Mangosoft Intellectual Property, Inc. v. Skype Techs. SA*, 2007 WL 2008899, at *2 (E.D. Tex. July 5, 2007)); Rubino Decl. at ¶ 8.

The location of ZTE Corporation does not favor transfer, since these witnesses are located abroad and will have to travel "a significant distance no matter where they testify." For this reason, courts do not consider the convenience of foreign witnesses in a transfer analysis. *Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11CV201 LED-JDL, 2011 WL 13098296, at *2 (E.D. Tex. Dec. 21, 2011) (discounting witnesses based in Taiwan in convenience analysis);

21

*Uniloc USA, Inc. v. Tangome, Inc.*, No. 6:16-CV-380-JRG, 2016 WL 9240543, at *6 (E.D. Tex. Nov. 14, 2016) (declining to give weight to location of corporation's six likely witnesses from its corporate affiliates in China).  Defendants also assert that they will rely on ZTA employees located throughout Northern California and in San Diego involved in research and testing of the Accused Devices.  Motion, at 13; Dkt No. 36-3, at ¶¶ 5, 7-8.  However, ZTA fails to identify these potential witnesses by name and does not describe their relevant knowledge in any detail.[4] *See Core Wireless Licensing, S.A.R.L. v. Apple*, *Inc.*, No. 6:12-CV-100-LED-JDL, 2013 WL 682849 *at 4 (E.D. Tex. 2013) (denying motion to transfer where Apple failed to identify employees with knowledge of the accused systems, marketing, or financial details).  Moreover, San Diego is in the Southern District of California and is more than 500 miles from the Northern District.

Likewise, Defendants make no showing that the testimony of Google employees is likely to be important at trial, nor have Defendants identified specific Google employees likely to serve as key witnesses.  *See Aerielle, Inc. v. Monster Cable Prod., Inc.*, No. 206CV382TJW, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007) (moving party must "specifically identify key witnesses and outline the substance of their testimony"); *Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07-CV-355, 2008 WL 819956, at *5 (E.D. Tex. Mar. 25, 2008) (defendants failed to identify how potential witness inventors would be relevant).  *See also Frito-Lay N. Am., Inc.*, 867 F. Supp. 2d at 870.  For this reason as well, this factor weighs strongly against transfer.

---

[4] Defendants submit a Declaration of Jeff Yee, a Vice President of ZTE Corporation, addressing the relevance of Google to the accused products, but Defendants make no representation that Mr. Yee himself is a relevant witness in this case.

**(b)**     **Access to Sources of Proof Does Not Favor Transfer**

Defendants place significant weight on accessibility to sources of proof and argue that this factor favors transfer because most of the relevant documents and records, as well as key managers and personnel, are located in California and Austin, Texas, and argue that little to no evidence is located in this District.  Mot. at 22-28.  Defendants are incorrect.  As an initial matter, "the accessibility and location of sources of proof should weigh only slightly in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis due to advances in copying technology and information storage."  *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); *see also Abatix Corp. v. Capra, et al.*, No. 2:07-CV-541, 2008 WL 4427285, at *7 (E.D. Tex. Sept. 24, 2008).  Nonetheless, this factor does not favor transfer for several reasons.

First, in order to show that this factor favors transfer, Defendants must identify their sources of proof with *specificity.  Invitrogen Corp. v. Gen. Elec. Co., et al.*, No. 6:08-CV-112, 2009 WL 331891, at *2 (E.D. Tex. Feb. 9, 2009).  Defendants have not done so.  Defendants conflate access to sources of proof with general statements about willing and non-willing witnesses.  Mot. at 22-24.  For example, ZTE focuses only on the unspecified employees at facilities in California.  *Id.*  These "general statements" are insufficient "to show that transfer would make access to sources of proof either more or less convenient for the parties."  *Invitrogen Corp.*, 2009 WL 331891, at *2.  Second, "[a]lthough the documents relevant to this case are dispersed among several geographic locations . . . the location of documents is of little consequence since they will almost certainly be produced electronically."  *VCode Holdings, Inc. v. Cognex Corp.*, No. 2:07-CV-138, 2007 WL 2238054, at *3 (E.D. Tex. Aug. 3, 2007).  "[P]atent litigation usually involves sources of proof that are readily convertible to an electronic medium" and "it is presumed that the parties will exchange discovery electronically."  *Aloft*

23

*Media,* 2008 WL 819956, at *4.  Defendants have failed to identify any evidence that cannot be exchanged electronically.  In fact, Defendants have admitted that much of the discovery lies on an electronic server five hundred miles away from the Northern District of California.  Mot. at 3-4; Shan Decl. at ¶ 16.  Thus, "[a]ny convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document."  *Aloft Media,* 2008 WL 819956, at *4.  Further, this District has held that any physical documents, including the Accused Products, can be shipped just as conveniently to this District as they can elsewhere. *Id.*  (finding factor neutral in patent infringement case where defendant failed to identify any physical evidence that would be difficult to convert to electronic medium); *see also Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1000 (E.D. Tex. 2009) ("Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone.").

ZTE has no basis to contend that the main source of evidence relating to the Accused Products is Google.  Although AGIS has accused functionality related to Google's Android Operating System, AGIS expects to submit infringement contentions that do not invoke Local Patent Rule 3-1(g), and that rely only on publicly-available open source code or public APIs. Because of this, the vast majority of relevant evidence will come from ZTA and ZTX, not Google.  Defendants also ignore the fact that Google maintains a significant presence in Texas. Even if Google possesses relevant evidence regarding the apps at issue, Defendants have not set forth any reason as to why this information will not be electronically accessible from any location, including proprietary source code which should be accessible in digital form regardless of where it is stored.  As this Court has recognized, such electronic production does not support

transfer. *Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006). Google's possible role as a non-party in this case—the extent of which is disputed by AGIS— should not be the determining factor to transfer venue of a case.  The Northern District of California is not appreciably closer to those sources of proof than the Eastern District of Texas. Defendants acknowledge that additional documents relating to research, development and testing of Accused Devices takes place in its U.S. facilities in San Diego.  Mot. at 3-4.

AGIS's proof is maintained in its offices in Marshall, Texas, as well as in offices of its related companies in Jupiter, Florida; Lenexa Kansas; Austin, Texas; and in Allen, Texas in the office of its consultant Eric Armstrong.  Beyer Decl., at ¶¶ 10, 15, 17, 19, and 20.  AGIS also intends to obtain evidence relevant to damages, such as the consumer market value of the features enabled by the Patents-in-Suit, consumer surveys and marketing information regarding demand for particular applications and features from third-party cellular carriers, including AT&T, Sprint, and Verizon.  Rubino Decl., at ¶ 6-8.  AT&T's headquarters is in Dallas; Sprint's headquarters is in Overland, Kansas; and Verizon's headquarters is in New York, each substantially closer and more convenient to this District than to the Northern District of California.  *Id.*  AGIS has no sources of proof in the proposed transferee district.  Given the abundant proof in or closer to this District, this factor weighs against transfer.

(c)       **Compulsory Process Does Not Favor Transfer**

More non-party witnesses likely to testify in this case reside in or around the Eastern District of Texas than the Northern District of California.  *See PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *4 (E.D. Tex. Mar. 21, 2013).  Evidence relevant to damages will likely come from non-party witnesses from AT&T,

25

Sprint, and Verizon.  Rubino Decl., at ¶ 6-8.[5]  It is more likely that the attendance of witnesses

working at AT&T in the Dallas area can be compelled if this action remains in the Eastern

District of Texas.  Moreover, non-party AGIS consultant, Mr. Armstrong, is within the subpoena

power of this District, whereas he may not be compelled to testify in the Northern District of

California.

### 2.        The Public Interest Factors Weigh Against Transfer

#### (a)        This District Has a Substantial Interest in This Dispute

This District has a significant, localized interest in this dispute.  AGIS is organized under

Texas law, maintains a principal place of business in this District, and works with a consultant in

this District.  AGIS's founder and CEO, as well as other relevant AGIS witnesses, have strong

ties to this District.  Beyer Decl., at ¶¶ 3, 7, 15, 18, 22.  ZTX is also incorporated under Texas

law, ZTA maintains a call service center facility within this District and has employees who live

and work in this District.  *See Frito-Lay N. Am., Inc.*, 867 F. Supp. 2d at 872.  Defendants

contend that the Northern District of California has a local interest on the basis of Google's

headquarters and the fact that potential non-party witnesses are located there (Motion at 24-27),

but Google is not even a party to this action.  *See Vertical Computer Sys., Inc. v. LG Elecs.

MobileComm U.S.A., Inc.*, No. 2:10-CV-490-JRG, 2013 WL 2241947, at *6 (E.D. Tex. May 21,

2013).  As discussed above, the relevance of the listed non-party witnesses is doubtful.  For these

reasons, this factor clearly weighs against transfer.   This District has a particular interest in

adjudicating this dispute for an additional reason—this Court has already currently presides over

---

[5] For example, based on AGIS's initial investigation, it appears that Bahadir Koseli, a Lead Product Marketing
Manager at AT&T who works in its Dallas office, may be called to provide information relating to the value of the
accused features.  *Id.*

the five pending cases, all of which involve at least four of the same Patents-in-Suit.  Therefore, this factor weighs against transfer.

**(b)      Court Congestion Weighs Against Transfer**

Defendants contend that the speed with which a case goes to trial and is resolved is neutral (Mot. at 29).  U.S. District Court statistics for the 12-month period ending March 31, 2017 indicate the median time for cases to go from filing to trial in the Northern District of California is 25.4 months, compared to 21.4 months in this District.  Rubino Decl., at ¶¶ 9-10. Since the time to trial is, in fact, faster in this District, this factor also weighs against transfer. Additionally, a Docket Control Order has already been entered in three of five cases pending in the District[6], which set a January 7, 2019 trial date.  Dkt. 44 at 2.  Therefore, it is known that the time to trial in this case will likely be far faster than 25.4 months from the filing of this Opposition, whereas transfer to Northern District of California will likely require significantly more time for this case to be tried.  Accordingly, this factor weighs against transfer.

## IV.    CONCLUSION

For the foregoing reasons, AGIS respectfully requests that the Court deny Defendants' Motion to Dismiss for improper venue, and deny Defendants' motion to transfer.

Dated: December 29, 2017                    **BROWN RUDNICK LLP**

                                            _/s/ Alfred R. Fabricant_
                                            Alfred R. Fabricant
                                            Texas Bar No. 2219392
                                            Email: afabricant@brownrudnick.com
                                            Peter Lambrianakos
                                            NY Bar No. 2894392
                                            Email: plambrianakos@brownrudnick.com
                                            Vincent J. Rubino, III

---

[6] *AGIS Software Development LLC v. Apple, Inc.*, 2:17-cv-00516-JRG (E.D.Tex.); *AGIS Software Development LLC v. LG Electronics, Inc.*, 2:17-cv-00515-JRG (E.D.Tex.) (Consolidated Case); *AGIS Software Development LLC v. Huawei Device USA Inc. et al*, 2:17-cv-00513-JRG (E.D.Tex.) (Lead Case).

NY Bar No. 4557435
Email: vrubino@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
John A. Rubino NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Enrique W. Iturralde
NY Bar No. 5526280
Email: eiturralde@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: 212-209-4800
Facsimile: 212-209-4801

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**McKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: 903-923-9000
Facsimile: 903-923-9099

**ATTORNEYS FOR PLAINTIFF,
AGIS SOFTWARE DEVELOPMENT, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2017 a true and correct copy of the above and foregoing document has been served by email to counsel of record in compliance with Local Rule CV-5(a).

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
